## IN RE APPEAL OF CHARLES H. COLBY.

**TAXATION:** Minerals Underlying Surface of Land. Minerals supposed to underlie the surface of lands, and reserved by the owner in his conveyance of the surface, may not be assessed beyond a mere nominal sum, when it is made to appear that the existence of such minerals is a mere matter of conjecture.

*Appeal from Marion District Court.*—J. H. APPLEGATE, Judge.

NOVEMBER 22, 1918.

CHARLES H. Colby owned the NE¼ of the SE¼ and the NE¼ of the SW¼ and the W½ of the SW¼ of Section 34, in Township 74 North, of Range 19 West of the 5th P. M., in Marion County, and thereafter conveyed said land, including the following, in his deed:

"The grantor reserves, however, from this deed all coal and iron and minerals on or under said land, including the oils of all kinds, and the right to enter upon said land and sink shafts for the purpose of mining and carrying away from this said land all such coal, iron, and minerals of all kinds, and oils of all kinds, and for the purpose of mining and carrying away from said land all such coal, iron, and

minerals of all kinds, and oils of all kinds, and for the purpose of erecting all necessary machinery for such mining purposes or securing such oils at any and all times he or his assigns may see fit, and also all rights for prospecting for any of said minerals or oils, providing such prospecting. mining and securing of said coal, ores and oils shall be done with as little inconvenience to the grantee, or his grantees, as the carrying on of such work shall admit of, also shall have the use of such an amount of the surface of said lands not exceeding five acres as may be necessary or convenient for mining purposes, also the right of way, not exceeding one hundred feet in width for a railroad track or tracks across the above described lands. If the parties hereto are unable to agree upon the value thereof, no surface shall be taken and occupied without adequate compensation therefor, found by a board of arbitrators, each party selecting one, the two so chosen selecting a third. The additional consideration of ten dollars for each and every diamond drill hole after drilling same shall be paid by said grantor and received by said grantee in full for all damages to crops, fences, or otherwise, which may reasonably be caused by the acts of said grantor, his successors, assigns, agents, or employes in entering upon and prospecting for said coal, other minerals, or mineral products on said lands. Said grantor to have the right to remove all tools, machinery, and appliances used in prospecting by him, his successors, assigns, agents or employes. This waiver to run with the land."

Thereafter, the assessor of the township containing the land, assessed, in the spring of 1917, the coal under said land at $30 per acre. Colby objected thereto before the board of review, which body reduced the assessment to $20 per acre. He then appealed to the district court, where, on hearing, the assessment on the entire quarter section was reduced to $2,000. Colby appeals.—*Modified and affirmed.*

*Coffin & Rippey,* for appellant.

*N. D. Shinn,* for appellee.

LADD, J.—In conveying 160 acres of land, appellant. Charles H. Colby, excepted therefrom all coal and other minerals beneath the surface, and in the spring of 1917, the assessor assessed the value of the "coal under" the several 40's at $1,200 each. The board of review reduced this to $800, and the district court further reduced the assessment against the "coal, rights and appurtenances thereto owned by the complainant," to $2,000. Section 1308 of the Code declares that all property, real and personal, is subject to taxation, and Paragraph 8 of Section 48 of the Code defines land, real estate, and real property as including "lands, tenements, hereditaments, and all rights thereto and interests therein, equitable as well as legal." It will be noticed that the exception, or reservation, is of all coal in place, and that all provisions with reference to removal of same are additional thereto. Minerals beneath the surface may be made the subject of separate ownership, either by a grant of the minerals by the owner of the land, or by a grant of the land excepting the minerals; and thereby, an estate in fee simple is created in the minerals, as corporeal things real. 1 Tiffany on Real Property, Section 219; *Snoddy v. Bolen,* 122 Mo. 479; *Marvin v. Brewster Iron Min. Co.,* 55 N. Y. 538; *Sloan v. Lawrence Furnace Co.,* 29 Ohio St. 568; *Manning v. Frazier,* 96 Ill. 279.

It is equally well settled that, when the fee in the mineral has been separated from the fee in the surface, the fee or interest in the former is assessable and taxable to the owner thereof, as real estate. This much is settled by the statutes heretofore referred to; for surely, the title to minerals *in situ* constitutes an interest in land. See *In re Major,* 134 Ill. 19 (24 N. E. 973); *Kansas Nat. Gas Co. v. Board of Commissioners,* 75 Kan. 335 (89 Pac. 750); *Wolfe*

*County v. Beckett*, 127 Ky. 252 (17 L. R. A. [N. S.], 688, and note collecting the cases).

It is to be presumed that all "coal and iron and minerals on or under said land, including the oils of all kinds," and the right to enter upon said land to mine these, were of some actual value. The appellant does not controvert this; but contends that, if coal exists beneath the surface, this is unknown to anyone, and for this reason, the assessment is excessive and unreasonable. No coal had been mined from the land. No tests had been made to ascertain whether there was coal therein. Colby testified that the reservation or exception was included in the deed in the hope that coal or other minerals might be found, though he had never heard of their existence in the land; that the nearest railway switch was 4 miles distant, and the land 10 miles from the nearest town.

Swanson, a mining and civil engineer, testified to having had 15 years of experience in prospecting for coal, and testified that, ordinarily, options were taken on land, and the existence of coal ascertained by drilling; that the value of coal beneath the surface depended on the quantity of the coal, its quality, and its availability for the market; that, to be workable, the vein must be not less than 3 to 3½ feet thick; that its value can only be ascertained on a tonnage basis, when being removed; that a roof of sufficient strength to hold the soil above is essential to the mining of the coal; that a country mine is of little or no value; that, in this particular region along the Des Moines River Valley, coal often lies in pockets, and in Monroe County, there are often what are known as faults, more or less extensive, being rock, or other substances, instead of coal. The witness further testified that, even when tested with drills, and coal is found, it usually turns out better or worse than figured, and that there is much uncertainty as to quality, and, even when prospected, it cannot be told from a single

test whether there are merely a few acres of coal or a great many; that the value of coal under the land not prospected is purely speculative; and that, without prospecting, the probable existence of coal is mere matter of chance. All this was corroborated by Shivers, another expert; and the other evidence was that only by drilling could it be ascertained whether coal existed beneath the surface, and that, in Monroe County, the existence of coal at one place did not indicate that it was to be found at another, near by.

Witnesses called by defendant, after drawing attention to the existence of country mines near by, and describing them, expressed the opinion that coal existed beneath the surface of the land in controversy, and that it was worth $25 or $30 per acre, they supposed, or something like that; but admitted that they knew nothing about there being any coal in said land, nor did they have knowledge that it extended to any considerable extent beneath the surface of the adjoining land. Thus, Cooley was asked:

"You do not know that there is any coal at all on this Jeffers land, do you? A. I do not know a thing about it."

Pearson was asked:

"If there is coal under the Colby land, you do not know it? A. I do not."

The other witness called by appellee, Maddy, was equally candid in saying that he knew nothing of the existence of coal there. This evidence leaves no doubt that there may be coal under this land, but that no one has any reasonable ground for so saying. The witnesses testifying in behalf of appellee based their conclusions on the inference that, because coal is found in adjoining land, it must exist beneath the surface of the land in question; but the experts—and they are not contradicted—were of opinion that such an inference was unwarranted. Whether coal exists in the described land, and is retained *in situ* by appellant, under the exception contained in the conveyance, is pure matter of

conjecture; and we are of opinion that the assessment should not exceed a nominal sum against each 40, as one dollar; and the assessment is ordered reduced accordingly. —*Modified and affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.