HOWARD WILCOX et al., Appellants, v. J. A. RUAN et al., Appellees.

**CORPORATIONS:** Transfer of Stock—Effect. An assignment by a
1    stockholder of all his stock holdings in a corporation cannot work
a conveyance of lands *personally* owned by him.

**TAXATION:** Tax Deed—Nonowner May Not Question. A tax deed
2    may not be questioned by one who has no interest in the land
conveyed thereby.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY, Judge.

NOVEMBER 15, 1921.

ACTION in equity, to quiet title to all minerals underlying certain real estate which is described in the opinion. There was a decree and judgment in favor of the defendants, and plaintiffs appeal.—*Reversed and remanded.*

*W. H. Keating, A. J. Walsmith,* and *McCoy & McCoy,* for appellants.

*Frank T. Nash* and *Malcolm & True,* for appellees.

STEVENS, J.—I. This is an action to quiet title to the coal and other minerals underlying the E½ of the SE¼ of the SE¼ of Section 21, and the E½ of the NE¼ of the NE¼ of Section 28, all in Township 75 north, Range 16 west of the 5th P. M. The land described is referred to in the evidence as Tracts A, B, and C. C is a small, irregular tract on the east side of the NE¼ of the NE¼ of Section 28, and comprises three or four acres. The court below found that defendants had title only to Tracts A and C. Tract B is, therefore, not involved upon this appeal. Plaintiffs claim to be the owners of the record title through numerous mesne conveyances from the United States government. No claim is made by the defendants that they have any interest in the surface. Defendants claim title under a written contract entered into July 3, 1915, by and between George H. and John H. Ramsey, as parties of the first part, and William Baxter, Daniel Edwards, William B. Williams, and John Owens, parties of the second part. By the terms of this contract, the parties of the first part agreed to transfer and assign to parties of the second part all the shares of the capital stock of the Garfield Coal Company, a corporation, and to transfer and assign any and all leases belonging to said corporation, if necessary, to second parties. The consideration named in this contract is $1,000, $400 of which was paid in cash at the time of the execution of the contract, and the balance, $600, by note of second parties, due on or before one year from date.

Defendants further claim that, at the time of the execution of the contract and the assignment of the shares of stock of the Garfield Coal Company, George H. Ramsey exhibited to the

parties of the second part a plat showing five adjoining 40-acre tracts, and represented that the corporation owned all of the coal and mineral underlying 160 acres thereof, which included all of the land in controversy. The shares of stock assigned by first parties under the above written agreement were as follows: 17½ shares of William C. Ramsey, 17½ shares of John H. Ramsey, and 50½ shares of George H. Ramsey. The assignments were made to William Baxter, secretary-treasurer of the corporation.

At the time of the execution of the contract and the assignment of the shares of stock, the legal title to the minerals in controversy was in George H. Ramsey, who obtained title thereto by quitclaim deed from the Garfield Coal Company, dated August 1st and recorded August 3, 1898. On December 3, 1919, George H. Ramsey and wife quitclaimed the above described land, together with all coal and mineral underlying the same, to A. C. Evans. Rachel Ruan has no other interest in the subject-matter of this litigation than as the wife of J. A. Ruan, who acquired whatever interest he may have in the property from John Owens and Daniel Edwards. Daniel Edwards conveyed his interest in the Second Vein Coal Company to the defendant Ruan, by bill of sale. The Second Vein Coal Company is a copartnership, composed of Mrs. William Baxter, William B. Williams, and J. A. Ruan, and was organized shortly after the assignment of the capital stock of the Garfield Coal Company to the parties named above. Mrs. Baxter has succeeded to the rights of her husband, William Baxter, now deceased. The Garfield Coal Company was engaged in the operation of a coal mine near the land in controversy, at the time the written contract was entered into; and later, either the same mine or another in that vicinity was operated by the Second Vein Coal Company. Ruan testified that he is the secretary-treasurer of both the corporation and the Second Vein Coal Company. The record is not quite clear as to whether the mine operated by the copartnership is the same mine as the one previously operated by the corporation. Other sources of title will be referred to and discussed later.

It is not claimed by defendants that George H. Ramsey conveyed any interest in the minerals personally owned by him,

unless by the transactions already mentioned. The obligation assumed by the parties of the first part in the written contract was to assign all of the shares of stock of the Garfield Coal Company to the parties of the second part, and to transfer and assign any and all leases held thereby, if necessary. The corporation was, and still is, a going concern, as we understand the testimony. The assignment of the shares of stock held by the parties of the first part in no way affected the corporate entity. Its holdings were neither increased nor diminished thereby. George H. Ramsey, so far as anything bearing upon that question is shown in the record, never obligated himself to convey any property owned by him personally. It is suggested that he owned practically all of the stock, and dominated and controlled the management and business of the corporation, and that he treated the coal land standing in his name as its property. The record does not sustain this contention. The most that can be claimed for it is that it shows that George H. Ramsey, when he exhibited the plat which he said showed the property of the corporation, stated that the 160 acres included the two 20-acre tracts in question. The evidence does not reveal when or by whom the plat was made, but it does show that the matters written thereon are in the handwriting of John H. Ramsey. As previously stated, the Garfield Coal Company did at one time own tracts A, B, and C; but in August, 1898, it quitclaimed the same to George H. Ramsey. So far as appears from the evidence, the plat may have been made before that date. The words "Garfield Coal Company," with other matters, are written on the two 20-acre tracts shown on the plat and the two 40-acre tracts immediately east thereof, but do not appear on the other 40.

William Baxter was deceased at the time of the trial, and George H. Ramsey was not called as a witness; but the other parties to the written contract testified that Ramsey told them that the mineral underlying the 160 acres belonged to the corporation. While the record is somewhat confusing at this point, we assume that the title to the coal underlying the surface of the other tracts designated on the plat was either in the Garfield Coal Company, or it held some right thereto under one or more leases. In any event, it is not claimed that the record title was

in George H. Ramsey.  We have held that minerals underlying
the surface of the land are real estate, subject to be conveyed and
taxed as such.  *In re Appeal of Colby,* 184 Iowa 1104.  Neither
the agreement to assign the shares of stock of the corporation,
nor the exhibition of the plat, nor the statement of George H.
Ramsey that the minerals underlying the land designated there-
on belonged to the corporation, amounted to a conveyance of
his personal interest therein.  He may have made false repre-
sentations to the assignees of the stock as to the holdings of the
corporation, but this did not have the effect to transfer title
to them to real estate owned by him.  Whether the facts shown
were sufficient to work an estoppel against Ramsey or not, and
whether, if so, same were available to the defendants, as against
the plaintiff Caldwell, to whom A. C. Evans conveyed the land
by warranty deed, while the action to quiet title was pending,
we need not determine, as no estoppel was pleaded.

Defendants also claim title by adverse possession.  This
claim is wholly without support in the evidence.  It is true that
some of the defendants went upon Tract C and dug a few
holes, shortly before A. C. Evans commenced the action to quiet
title; but they acquired no adverse right or title thereby.

II.  Plaintiffs also claim title to the mineral underlying
Tract C, under and by virtue of a tax deed.  The court below
held this deed invalid, and gave the defendants

2. TAXATION: tax deed: non-owner may not question. a right to redeem from the tax sale.  The min-
eral appears to have been taxed in 1914 to the
Second Vein Coal Company, and was sold for taxes on the 6th
day of December, 1915.  The ground upon which the court
found the tax sale invalid was that proper notice of redemption
had not been given.  Whether proper notice of redemption was
given is at this time immaterial.  Neither the Second Vein Coal
Company nor any of the other defendants had any interest in
the property sold for taxes and conveyed by the tax deed, and
could not, therefore, question plaintiffs' tax title.  Section 1445
of the Code of 1897; *Adams v. Burdick,* 68 Iowa 666.  It was
error for the court to set aside the tax sale and give defendants
a right to redeem.

The abstract is very greatly extended and incumbered by
unnecessary questions and answers.  For this reason, one third

of the cost of printing same will be taxed to appellants. The remaining costs in this court and in the district court will be taxed to the defendants.

The judgment and decree of the court below, in so far as the same is adverse to appellants, is, therefore, reversed, and the cause remanded for a decree in harmony with this opinion; or, if the parties prefer, decree may be entered in this court.— *Reversed and remanded.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.