## No. 10,284.

UNION PACIFIC RAILROAD COMPANY *v.* HANNA, ASSESSOR, ET AL.

Decided April 2, 1923.

Action to reduce the assessed valuation of reserved mineral rights in real property. Judgment of dismissal.

*Affirmed.*

1. TAXES AND TAXATION—*Mineral Reservations.* A coal and mineral reservation is an interest in land, is real estate, and not being exempt by Constitution or statute, is assessable under the laws of Colorado.

2. REAL PROPERTY—*Coal and Mineral Reservations.* The existence of coal or mineral beneath the surface of land is impliedly admitted by a grantor who makes a reservation of the rights thereto, in a deed of conveyance.

3. TAXES AND TAXATION—*Assessment—Presumption.* It is presumed that an assessment made by an assessor is correct, and in a proceeding to reduce the assessed valuation of property, the

burden is upon the objector to show that the assessment as made is excessive, or otherwise illegal. This showing must be by clear and convincing evidence, and if the burden is not sustained, the assessment must stand.

4. REAL PROPERTY—*Coal and Mineral Reservations—Value.* The fact that a grantor conveying land reserves the coal and mineral rights therein, is some evidence that the reservations are valuable.

5. TAXES AND TAXATION—*Assessment.* Where assessable property cannot be said to have a market value, the assessor in fixing the valuation may consider the price it would bring at a fair voluntary sale, and the value of its use, together with any other just method of determination.

6.     *Assessment—Discriminatory Valuation.* The contention of a railroad corporation owning coal and mineral reservations in land, that the assessed valuation thereof was discriminatory, preferential, and not uniform compared with other like assessments, considered and overruled.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Messrs. HUGHES & DORSEY, Mr. E. I. THAYER, for plaintiff in error.

Mr. WILLIAM R. KELLY, Mr. WALTER E. BLISS, Mr. VICTOR E. KEYES, attorney general, Mr. CHARLES ROACH, deputy, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE Union Pacific Railroad Company, or its predecessor, is the donee of a grant to many thousands of acres of land made by the United States in aid of building its railroad. The grant includes every odd numbered section of land between the southern and northern boundaries of Weld county, Colorado, for 20 miles on each side of the track of the railroad as it is now maintained. These lands have been sold by the railroad company from time to time and in the deeds of conveyance, by means of ex-

ception and reservation clauses, there were reserved to the grantor what the parties, for convenience, call "coal reservations", but which include all kinds of minerals underlying the lands, and also certain rights on and to the surface incident to prospecting, developing and removal of minerals therefrom. The clauses in question are in the following language:

"First:   All oil, coal and other minerals within or underlying said lands;

Second:   The exclusive right to prospect in and upon said land for oil, coal and other minerals therein, and which may be supposed to be therein, and to mine for and remove from said land all oil, coal and other minerals which may be found thereon by any one;

Third:   The right of ingress, egress and regress upon said land to prospect for, mine and remove any and all such oil, coal or other minerals, and the right to use so much of said land as may be convenient or necessary for the right of way to and from such prospect places or mines, and for the convenient and proper operation of such prospect places, mines, and for roads and approaches thereto or for removal therefrom of oil, coal, mineral, machinery, or other material."

In some, but it seems not in all, of these reservation clauses, in addition to the quoted language, the following words: "without further liability for damage therefor" are found in the second clause.

In the year 1919 the County Assessor of Weld County placed upon his assessment roll valuation of these mineral reservations as follows:

|  | Acreage of Lands. | Assessed Valuation of Mineral Reservations. |
|---|---|---|
| (1) | 13,614 acres at over $5.00 per acre | $255,590.00 |
| (2) | 408,670  "    " 50¢ per acre | $204,335.00 |
| (3) | 104,502  "    " $5.00 per acre | $522,510.00 |
|  | 526,786 | $982,435.00 |

The railroad company at first objected to each of the

three classes of assessments and, as provided in such a case by section 5639 and 5640 R. S. 1908; Compiled Laws of Colorado, 1921, sections 7291 and 7292—the amount of the total assessed valuation exceeding the sum of $7500— the company filed its written statement of objections with the assessor setting forth:

"1.    That said mineral reservations are exempt from all taxation for the reason that no evidence has ever been produced showing that any minerals are contained in said lands and therefore assert that the value thereof, if any, is nominal and not subject to taxation.

2.    That said assessed value of $5.00 per acre is excessive, too high, illegal and erroneous.

3.    That said assessed valuation is discriminatory, preferential and not uniform compared with other like assessments and is unjust and inequitable."

The company asked as relief that the assessor wholly eliminate from his assessment roll all these mineral reservations or in the alternate, correct his assessed valuation of the third enumerated class to a nominal assessed value not exceeding the sum of 25 cents per acre. The assessor, on the hearing of the objections, overruled them and, as required by our statute, set forth his reasons in writing, for his decision. The statute authorized an appeal by the objector to the county or district court. The railroad company availed itself of this right by filing a petition in the district court, setting forth its grievance, and later filed its amended petition on appeal by which, without prejudice to its right to question the assessability of any of these enumerated mineral reservations, or the amount of the assessment for any future year, withdrew its objections to items or classes 1 and 2, and restricted its attack to the assessment included in No. 3. It is conceded that this assessment of $5.00 per acre was intended to represent the valuations of the mineral reservations underlying wet or irrigated lands, while the assessment of 50 cents per acre, in the withdrawn second class, was intended to represent the valuations of coal underlying dry or non-

irrigated lands. The only issue, therefore, which was tried below in the district court, and which is for consideration here, is as to the assessment of $5.00 per acre on mineral reservations underlying 104,502 acres of wet or irrigated land.

At the hearing, and at the close of the evidence, the district court entered a judgment as of non-suit and dismissed the action, which judgment the railroad company seeks to have set aside on this review, upon the three specific objections which constitute its assignment of errors.

The first is that these mineral reservations are exempt from all taxation because no evidence was produced in the district court to show that any minerals are contained in the lands, and, therefore, that the value, if any, is merely nominal and not subject to taxation. The pertinent sections of our revenue laws are for convenience here inserted. The sections above cited provide that the court:

"shall not review or give relief against an assessment unless it shall appear manifestly excessive, fraudulent or oppressive.

Both the assessor and the said county or district court, in considering such statement of grievance by any such taxpayer, shall take into consideration the value as fixed by the assessor upon similar assessable property similarly situated."

Section 5591 R. S. 1908; Compiled Laws of Colorado, 1921, section 7243, provides:

"In determining the true value of taxable property, except as otherwise provided in this act, the market value shall be the guide. As to all classes or items of property in respect to which it cannot be fairly said to have a market value, the price it would bring at a fair voluntary sale thereof, the value of the use thereof, and the capability of use, together with any other just method of determination, may be considered by the assessor."

Section 5543 R. S. 1908; Compiled Laws of Colorado, 1921, section 7196, reads:

"All property not expressly exempt by law shall be sub-

ject to taxation. The term 'property' as used herein shall be held to include both tangible and intangible property."

Section 5540 R. S. 1908; Compiled Laws of Colorado, 1921, section 7193, in part, reads:

"The term 'real estate' includes, *first,* all land or interests in lands within the state to which title or the right to title has been acquired from or ratified by the government of the United States, or from the state."

That mineral reservations, not being exempt by Constitution or statute, are assessable under the laws of this state is beyond question, even if they are of a nominal value only. A mineral reservation is an interest in land, and is "real estate" by the very terms of our statute. In *Downman v. State of Texas,* 231 U. S. 353, 357, 34 Sup. Ct. 62, 63 (58 L. Ed. 264), it is said:

"Usually real estate is taxed as a unit; but as different elements of the land are capable of being severed and separately owned, the statute may authorize a separate assessment against the owners of the several parts. Accordingly if the title has been severed land may be taxed to one, timber to another, or land to one and coal to another."

The railroad company does not seriously contend that such reservations may not be taxed if minerals exist. Its real objection, under this heading is that, since the evidence at the trial did not affirmatively and directly show that any minerals are contained in the land, they are not assessable because their value, if any, consists in the minerals, and as there are no minerals, there is no value, hence not taxable. There is a statement in the opinion in *Rockwell v. Warren County,* 228 Pa. 430, 433, 77 Atl. 665, 666 (139 Am. St. Rep. 1006), which gives color to this contention. The court there said: "Because there may be a reservation of oil and gas by the grantor of the surface, * * * it does not follow that in point of fact there is any such estate in existence." The court, however, in that case expressly said that no such question was involved, yet it proceeded to suggest a rule for a supposed case when there

was no necessity for the declaration, which was *obiter*.

The railroad company also relies upon *In re Appeal of Colby*, 184 Iowa, 1104, 169 N. W. 443, wherein, as stated in the syllabus, the court said: "Minerals supposed to underlie the surface of lands, and reserved by the owner in his conveyance of the surface, may not be assessed beyond a mere nominal sum, (as $1.00), when it is made to appear that the existence of such minerals is a mere matter of conjecture.

This statement should be read in the light of the facts of that case. First we observe, if, as the Iowa court said, because the existence of minerals there was merely a conjecture, the assessment may be only nominal, ($1.00 per acre), this is contrary to the contention of the railroad company here that the reservations are not assessable at all. But in the Iowa case the reservation clause was quite different from the one in the instant case and of less value. There the reservation, as here, was of all kinds of minerals, and rights for prospecting and working the property with the use of a reasonable amount of the surface for such purpose, not exceeding 5 acres, and the right-of-way for a railroad track across the surface, for which incorporeal rights compensation must be made by the reservation owner to the owner of the surface, and an additional consideration of $10.00 paid for every diamond drill hole that was drilled in prospecting. The Iowa decision, we think, is not in point here, as to the value or extent of rights reserved. In the instant case the railroad company, though it does not overlook, seeks to minimize, the importance of the incorporeal or intangible, rights which were reserved to it, along with the minerals, in exercising which, in the judgment of the assessor, neither compensation is to be made, nor damages awarded, if an injury is done, which necessarily gives a value to the reservations over and above the mere value of the minerals that might be discovered.

We do not say, and only in a proper case, with appropriate parties present, would it be proper to decide, as between

the owners of the severed separate estates, what are their relative rights and liabilities; but we do say that the value of the rights of these reservation owners is manifestly greater than the value of similar rights involved in the Iowa case. The Iowa decision, and the *obiter* remark in the Pennsylvania case are the only authorities which tend, in any measure, to sustain the objections that plaintiff's reservations are non-assessable, or, if so, were assessed too high. The weight of authority is against the doctrine which plaintiff asserts they announce. There is no direct evidence that the lands out of which these reservations were carved contain minerals, but if the evidence was un-contradicted that no minerals, of commercial value, had been discovered, that would not be conclusive that the reservations are not taxable. First, however, let us consider the evidence. In a later part of the opinion we hold that the presumption attaches to the validity, in all re-spects, of the assessments made by the assessor. He tes-tified that he visited the lands in question, made careful investigation as to their mineral content, learned from per-sons who had drilled deep wells for water in lands in this vicinity that they had, in drilling, encountered seams of coal at different places, some of which coal the assessor himself saw, which seemed to be of good quality. There never has been a thorough prospecting of these lands, either by the owners of the reservations of by any one else, and so it has not been determined, by the ordinary methods or tests, that they contain commercial minerals, or any minerals whatever. The plaintiff's witnesses tes-tified that, to their knowledge, no coal exists in the prem-ises, and the railroad company has never, either by itself or through others, made any attempt to that ascertainment. The facts elicited by the inquiry of the assessor may not have the effect of showing that they contain minerals, and for the purposes of this case, we may concede the claim of the plaintiff that, from the evidence produced in the dis-trict court, it would be impossible to determine either that the lands do, or do not, contain minerals. That they do not

contain minerals would not, however, make the reservations valueless, or not subject to assessment. The only bearing, if any, that the non-existence of minerals would have upon the question for decision is as to the value, not the assessability, of the reservations. The precise question was before the Supreme Court of Illinois in *In re Major,* 134 Ill. 19, 22, 24 N. E. 973, 974, where it was urged that there was no evidence that coal existed under certain reservations. To this contention the court said:

"It is alleged ·in the petition, and is otherwise manifest, that whatever there was of coal or minerals underlying said land was reserved, and continued to be the property of appellant, with the right to mine the same. It can not be material, here, whether this right was of great or little value. If it was property, it was the duty of the assessor to return an assessment thereof."

The court further said that if the assessment was too high, relief could not be given in that case under the law of Illinois. Assuming that such relief may be given in this special proceeding, we will later consider the alleged excessiveness of the assessment. This decision was cited with approval in *People v. Bell,* 237 Ill. 332, 339, 86 N. E. 593, 19 L. R. A. (N. S.) 746, 15 Ann. Cas. 511. A similar decision was made in *Northern Pacific Ry. Co. v. Musselshell County,* 54 Mont. 96, 112, 169 Pac. 53, 58. The court in the course of its opinion, made a statement that is pertinent here:

"The reservation in question is dual: A corporeal hereditament, as to the coal and iron; an incorporeal hereditament, as to the right to enter the lands conveyed, to explore for coal * * *, and to extract the same when found, using so much of the surface as may be necessary. * * * it is property, presumably valuable, not exempt, and therefore taxable as an interest in realty."

*Board of Commissioners v. Lattas Creek Coal Co.,* 179 Ind. 212, 218, 100 N. E. 561, 563, is to the same effect. The court said: "The existence of the coal or mineral is impliedly admitted by appellee by accepting a deed there-

for." So here, the reservation of minerals from the grant of the suface is attended with the same result. Other cases cited in this opinion on other propositions, are also authority for our conclusion that these mineral reservations, even though no evidence was produced that coal actually exists in the lands in commercial quantity, or of commercial value, are assessable.

2. The second objection is that the assessed value of $5.00 an acre is excessive, too high, illegal and erroneous. The burden is upon the objector not only to show that the land is not assessable, which we have just held the railroad company did not sustain, but that the assessment made is excessive or too high, or was otherwise illegally made. The showing must be by clear and convincing evidence. It is presumed that the assessment made by the assessor is correct. He placed a value upon these reservations under wet land of $5.00 per acre. Unless, therefore, the objector has affirmatively and conclusively thus shown that the assessment is too high, it must stand. *Singer Mfg. Co. v. Denver,* 46 Colo. 50, 103 Pac. 294; *Washington U. C. Co. v. Thurston Co.,* 105 Wash. 208, 177 Pac. 774, 2 A. L. R. 1546; *State v. Downman,* 134 S. W. 787 (Texas) ; *Downman v. State of Texas, supra; Consolidated Coal Co. v. Baker,* 135 Ill. 545, 26 N. E. 651, 12 L. R. A. 247; *Sunday Lake I. Co. v. Wakefield,* 247 U. S. 350, 38 Sup. Ct. 495, 62 L. Ed. 1154.

The railroad company, the objector, did not establish, or attempt to show, by direct or specific evidence, clear or convincing, or otherwise, that the reservation held by it did not have a value equal to that placed thereon by the assessor. The mere fact that the plaintiff reserved these rights, when conveying the lands to purchasers and continues to hold them, with the right, at any time, to begin to exercise them, is some evidence that the reservations are valuable. In addition to the presumption that the assessor's acts were authorized, we have his testimony at the hearing that he interviewed many owners of lands in this region and asked of them their opinion as to the value

of reservations. Some of them were desirous of ridding their surface rights of them and they quite uniformly said that reservations lying under wet land were of the value of $5.00 to $7.00 an acre, which they were willing to pay, and reservations under dry land were worth from 50 cents to $1.00 an acre. Our statute says that for assessment purposes the market value of land may be taken into consideration. The railroad company refuses to sell these reservations, and, because of that fact, it may be that the facts testified to by the assessor are not sufficient to show market value. Where assessable property, such as this, cannot be fairly said to have a market value, the price it would bring at a fair and voluntary sale is to be considered by the assessor and also the value of its use, together with any other just method of determination. Plaintiff, not having produced any evidence at all as to the value of these reservations, contenting itself apparently with its assertion that they have only a nominal value, because coal has not been shown to underlie the lands, and there being evidence that, if the railroad company would' sell these reservations, (and it did at one time quote to a farmer interested, who made the inquiry, a price of $5.00 per acre), we conclude that this objection is not good and the assessment of $5.00 per acre upon the reservations in question must stand. It is to be borne in mind that the objector, itself, says there was no evidence before the district court as to the assessable or market value of these reservations. If that is true, then there is nothing whatever in this record to overcome the presumption of validity which attaches to the act of the assessor in making his assessment.

3. The third objection is that the assessed valuation is discriminatory, preferential and not uniform compared with other like assessments, and is unjust and inequitable. While several adjectives are used in the characterization which are not in our statute, it appears from the argument of plaintiff's counsel that the real objection is that these assessments are fraudulent in law, and discriminatory.

While the second class, assessment of 50 cents an acre on reservations underlying dry land, has been eliminated, and is not before this Court for consideration, the plaintiff, nevertheless, argues that there is no ground for assessing reservations under wet land at $5.00 an acre, while those under dry land are assessed at 50 cents an acre, and that this amounts, not merely to an excessive valuation, but to a discrimination against the plaintiff. Strictly speaking, if different assessments are made upon different estates of a taxpayer, this of itself, does not constitute a discrimination. Discrimination applies to cases where there has been a lack of uniformity, or where the assessment is more favorable to one taxpayer than to another, the estates taxed being of the same or similar character. Yet it is upon this distinction, as we understand the argument, that counsel for the railroad company in part bases his argument that the assessment of its reservations under wet land at $5.00 an acre is fraudulent in law, and is an unlawful discrimination against it. In the absence of a permissive statute, such as ours, the plaintiff could not maintain the proceeding which he has here initiated. His relief, if any, would be by a bill in equity, bringing the case within some well recognized ground of the jurisdiction of the court for relief against a discriminatory, excessive or illegal assessment. Our statute does not say that an aggrieved taxpayer may not have, in a proper case, adequate relief against a discriminatory or illegal assessment, but it says that in this statutory proceeding the court shall not review or give relief against an assessment unless it shall appear "manifestly excessive, fraudulent or oppressive." We have already said that this assessment is not too high. Whether the three grounds mentioned in the statute are sufficiently broad and elastic to cover all of the specific objections included in No. 3, it is not necessary now definitely to determine. We advert to the restrictive language of the statute, not for the purpose of determining its full scope, but rather to remove any possible misapprehension, as to its scope, that might arise by

our decision of the questions which plaintiff, under this head, has argued.   The objector does not attribute to the assessor an intention to perpetrate a fraud or to discriminate against it, but its position is that, as stated in the language of its counsel:   "The record clearly demonstrates that the assessments of the coal reserves under the irrigated lands are too high and manifestly excessive, and, in addition, that by reason of the systematic method pursued in blanketing flat rate assessments, overvaluing property and omitting assessable property from taxation, such assessments are fraudulent, oppressive, unequal and discriminatory."   A large number of cases are cited to the proposition that such a systematic plan and intention of the character mentioned not only violate state constitutions, which require uniformity and prohibit discrimination, but contravene the federal Constitution, which prohibits the taking of property without due process of law.   If that were the kind of a case before us, there would be no difficulty in agreeing with the objector.   Cases of the character which it has in mind are:   *Cummings v. National Bank*, 101 U. S. 153, 25 L. Ed. 903; *Lively v. M., K. & T. Ry. Co.*, 102 Tex. 545, 558, 120 S. W. 852; *Taylor v. Louisville, etc., Co.*, 88 Fed. 350, 31 C. C. A. 537; *A., T. & S. Fe Ry. Co. v. Sullivan*, 173 Fed. 456, 97 C. C. A. 1; *Greene, etc., v. Louisville & In. R. Co.*, 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; *Louisville, etc. Co. v. Greene, etc.*, 244 U. S. 522, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97; *Raydure v. Bd. of Supervisors*, 183 Ky. 84, 209 S. W. 19.   We have scrutinized these cases and do not find them applicable.   Possibly the Lively Case goes as far as any in condemning discriminatory assessments.

Substantially similar language has been employed by the courts in numerous cases in characterizing assessments which they were then considering, and it is the objector's position here that in making assessments upon even numbered sections in this part of the county, in which there are no mineral reservations, and which are of the same

character and quality and of the same assessable value as the adjoining odd numbered sections, which have mineral reservations, and that, as the assessor has systematically, intentionally and continuously placed upon the former the same value he gives to the latter, this operates as a fraud in law and as a discrimination against the owner of mineral reservations. How this could be so, as against the plaintiff, who owns, so far as concerns the point now under consideration, only reservations of minerals beneath the surface, but no surface estates, we are not told. It may be true that the intrinsic value of minerals in a reservation underlying wet lands is the same as the intrinsic value of minerals in a reservation under dry lands; but it does not necessarily follow that there is not a difference, and a substantial one, between the value of such reservations as such. It may also be true that the assessor was not justified in taking into consideration the fact, if it be a fact, that the damage inflicted upon the owner of the surface of wet lands, by the exercise of the rights which the former owner reserved in the reservations to prospect and remove the minerals, would be greater than the damage to the owner of the surface of the dry lands. Yet it would seem quite clear that the exercise of the right to prospect for and remove minerals beneath the wet lands, the same being of much greater value than the dry lands, might, and probably would, cause more damage to the owner of the former, than would the exercise of a similar right to the owner of the latter, estate; and if this be true, as we think it is, necessarily the owner of the reservation, in case he wishes to sell it, would be able to realize a greater price for the reservation rights under the wet, than he could obtain for similar rights under the dry land. Even though the minerals in reservations under the wet and dry lands are of the same intrinsic value, nevertheless, since the actual and potential value of the reservations, as such, for the purpose of purchase and sale, and, therefore, their assessable value, is different, the assessor may, and should, make his assessment of such

reservations accordingly. There is not the slightest evidence that $5.00 an acre on the reservations lying under wet lands is too high. The objector does not claim that reservations under the dry land are too low, but if he did the assessor would be likely, on request, to grant the appropriate relief. If the $5.00 valuation is not too high, the railroad company is not injured if the dry land reservations are too low. This is not a discrimination against the owner of the reservations. If there are mineral reservations in Weld county other than those owned by the plaintiff, the record does not show it. There is no claim that reservations, similar in character and value to those owned by the railroad company, are assessed too low, and it is not fair, of course, to compare mineral reservations, in this respect, with surface estates. If the surface estate of wet lands in the odd numbered sections, subject to mineral reservations, is assessed too high, as compared with the assessment of the surface estate of wet lands, in the even numbered sections, without reservations, this works no injustice to the objector, but rather it is an advantage to it, in that its proportion of the general tax is less than it would be if a lower valuation is fixed upon the surface estate above its reservation. There is not a particle of evidence that wet lands in even numbered sections, which are not burdened with reservations, are assessed too low, or that they do not have an assessable value which the assessor has placed upon them. Neither is there any evidence that the surface estates, in the odd numbered sections, of wet lands, do not have the value which the assessor places upon them. If, as between the owners of the surface estates in the odd and even numbered sections, either is dissatisfied with the valuations which the assessor has made, because of inequality, the one, if either, who has been injured, may apply to the board of county commissioners to equalize the assessment. Certainly no discrimination against the owner of the mineral reservations results from the acts of the assessor in making valuations of the different estates in the odd and even numbered sections.

A case in principle exactly the same as ours, supporting the conclusions which we have just reached, is *State v. Downman, supra,* where the court, at page 798, says:

"It does not appear from the evidence that the taxes assessed against the defendant were greater than those assessed against any other owner of mineral rights in Llano County. But the argument made, based on the facts, is that the owners of the surface estate, to wit, Downman's grantors, were required to pay and did pay the same amount of taxes upon their lands as other owners who had not conveyed the mineral rights in their respective tracts. This latter feature, however, does not make the assessments in our judgment contravene either the letter or the spirit of the constitutional provisions above quoted."

The judgment of the Civil Court of Appeals in the Downman case was taken to the Supreme Court of Texas, but the latter declined to interfere, and the case then went by writ of error to the Supreme Court of the United States, where Downman, who was the owner of mineral reservations, renewed his attack on the validity of the assessment, which is the same kind of an attack that is made here by the railroad company on the assessment of the Weld County assessor. The Supreme Court of the United States affirmed the decision of the Texas Civil Court of Appeals. It did not assume to pass upon the construction of the Texas statutes which the Civil Court of Appeals held authorized the assessment, nor did it concern itself with the regularity of the method by which the taxes were assessed, or with the fairness of the valuation. Those were merely subordinate questions which did not invoke the jurisdiction of the Federal Court. But the latter tribunal did review the case to determine if there was a discrimination against Downman in taxing him on his mineral rights, and upon this question, which is the same as that now before us, in affirming the judgment of the Civil Court of Appeals of Texas, said:

"The state court held that such was the law in Texas, in view of the general language of the statute defining

real estate as including not only the land itself but the buildings on the land and the minerals under the land. There was, therefore, nothing discriminatory in assessing Downman as owner of the mineral right which had been sold to him and separately assessing the owner of the surface with what remained. That the two owners were thus separately assessed, each on his own property, appears from the fact that both values were separately entered upon the taxbooks—Downman's mineral rights, for which he paid $1.50 an acre, being assessed at 50 cents an acre and the surface estate at from $2 to $3 per acre. If the latter was over-assessed it affords Downman no defense."

Applying the foregoing doctrine, we say that, if the owner of the surface estate of the wet lands in the odd numbered sections, having reservations, was over-assessed, because the same valuation was placed thereon as was placed upon the wet lands in the even numbered sections, which did not have reservations, but included what is ordinarily meant by lands, the surface and everything above and beneath the surface, it affords the railroad company, the owner of the mineral reservations, no defense. We have the decision of the highest tribunal in this country that, in such a case, there is no discrimination or illegality.

The judgment of the district court is affirmed.