FEDERAL LAND BANK OF WICHITA, Plaintiff,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, the Board of County Commissioners of the County of Alamosa, the Board of County Commissioners of the County of Arapahoe, the Board of County Commissioners of the County of Baca, the Board of County Commissioners of the County of Bent, the Board of County Commissioners of the County of Boulder, the Board of County Commissioners of the County of Chaffee, the Board of County Commissioners of the County of Cheyenne, the Board of County Commissioners of the County of Conejos, the Board of County Commissioners of the County of Costilla, the Board of County Commissioners of the County of Crowley, the Board of County Commissioners of the County of Custer, the Board of County Commissioners of the County of Delta, the Board of County Commissioners of the County of Douglas, the Board of County Commissioners of the County of Eagle, the Board of County Commissioners of the County of Elbert, the Board of County Commissioners of the County of El Paso, the Board of County Commissioners of the County of Fremont, the Board of County Commissioners of the County of Garfield, the Board of County Commissioners of the County of Gunnison, the Board of County Commissioners of the County of Huerfano, the Board of County Commissioners of the County of Jefferson, the Board of County Commissioners of the County of Kiowa, the Board of County Commissioners of the County of Kit Carson, the Board of County Commissioners of the County of La Plata, the Board of County Commissioners of the County of Larimer, the Board of County Commissioners of the County of Las Animas, the Board of County Commissioners of the County of Lincoln, the Board of County Commissioners of the County of Logan, the Board of County Commissioners of the County of Mesa, the Board of County Commissioners of the County of Moffat, the Board of County Commissioners of the County of Montezuma, the Board of County Commissioners of the County of Montrose, the Board of County Commissioners of the County of Morgan, the Board of County Commissioners of the County of Otero, the Board of County Commissioners of the County of Ouray, the Board of County Commissioners of the County of Park, the Board of County Commissioners of the County of Phillips, the Board of County Commissioners of the County of Prowers, the Board of County Commissioners of the County of Pueblo, the Board of County Commissioners of the County of Rio Blanco, the Board of County Commissioners of the County of Rio Grande, the Board of County Commissioners of the County of Routt, the Board of County Commissioners of the County of Saguache, the Board of County Commissioners of the County of San Miguel, the Board of County Commissioners of the County of Sedgwick, the Board of County Commissioners of the County of Teller, the Board of County Commissioners of the County of Washington, the Board of County Commissioners of the County of Weld, the Board of County Commissioners of the County of Yuma, Defendants.

Civ. A. No. 84–K–126.

United States District Court,
D. Colorado,
Civil Division.

April 22, 1985.

Martin A. Rosen, Pendleton & Sabian, P.C., Denver, Colo., for plaintiff.

S. Morris Lubow, Denver, Colo., for defendants.

## ORDER

KANE, District Judge.

Before me are cross motions for summary judgment. Plaintiff Federal Land Bank of Wichita brings this action against 50 Colorado counties through their respective boards of county commissioners, claiming jurisdiction under 28 U.S.C. §§ 1331 and 1332. The bank seeks (1) declaratory judgment that its royalty interests are exempt from taxation by the counties; (2) a mandatory injunction prohibiting the counties from future assessments or collection of such taxes upon the bank's mineral holdings; and (3) costs, attorney fees, and other unspecified legal and equitable relief. Defendant counties previously challenged this court's jurisdiction and moved to dismiss the action. On April 9, 1984 I denied defendant counties' motion to dismiss. *See Federal Land Bank of Wichita v. Board of County Commissioners of Adams County,* 582 F.Supp. 1507 (D.C.Colo.1984).

Plaintiff bank is a federal instrumentality established pursuant to the Federal Farm Loan Act of 1916, as continued under the Farm Credit Act of 1971 (12 U.S.C. § 2001 *et seq.*). Plaintiff owns oil and gas mineral interests in 50 counties in the State of Colorado. In 21 of those 50 counties the bank's interests burden lands which are currently producing oil and gas. In the remaining 29 counties, plaintiff's interests burden nonproducing oil and gas lands. Plaintiff's interests are presently taxed as real property in accordance with Colorado's ad valorem tax, Articles 1–13 of Title 29 of the Colorado Revised Statutes. Plaintiff claims that application of Colorado's ad valorem tax to the bank violates 12 U.S.C. § 2055 of the Farm Credit Act of 1971, which exempts federal land banks from all state, municipal, and local taxation, except for taxes upon real estate according to value. I must decide whether the statutory language of 12 U.S.C. § 2055 prohibits the application of Colorado's property tax to plaintiff's mineral interests.

In its first four claims for relief plaintiff contends that Colorado's tax on producing oil and gas interests (Colo.Rev.Stat. § 39–7–101 *et seq.*) is inapplicable to the bank. It argues: (1) the tax is "in effect" a tax on personal property and not a tax on real property; (2) the tax is not based on value; (3) the statute violates the equalization requirements of Article X, Section 3, of the Colorado constitution; and (4) the statute implicitly recognizes an exemption for royalty interests held by federal instrumentalities. Plaintiff's fifth claim for relief, set forth in its amended complaint, concerns a separate provision of Colorado's tax law. Plaintiff claims that the provision for taxation of severed mineral interests (Colo.Rev. Stat. § 39–1–104(4)) is not based on value as required by 12 U.S.C. § 2055.

## SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure (F.R.C.P.) permits the entry of summary judgment on a claim when there is no genuine issue of material fact outstanding. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1377, 1383 (10th Cir.1980). As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980)

■ In order to determine the propriety of summary judgment I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. *Id.* Summary judgment is not a substitute trial by affidavit. *Ando v. Great Western Sugar Company,* 475 F.2d 531, 535 (10th Cir.1973). No margin exists for disposition of factual issues, nor does summary judgment serve as a substitute for trial when there are disputed facts. *Commercial Iron & Metal Company v. Bache & Company,* 478 F.2d 39, 41 (10th Cir.1973). Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1309 (10th Cir.1980).

The parties to this action have stipulated to many of the facts contained in plaintiff's complaint. Only questions of law remain for me to decide. Summary judgment is therefore appropriate in this case.

## I. TAX IMMUNITY

The first question I must answer is whether plaintiff's mineral interests are real property or personal property. If I find that plaintiff's mineral interests are personal property, I must hold that the bank, as a federal instrumentality exempt from local taxation under federal constitutional immunity principles and under 12 U.S.C. § 2055, is not subject to taxation by the State of Colorado.

The federal statute on which plaintiff bases its claim of immunity from local taxation provides:

> Every Federal land bank and every Federal land bank association and the capital, reserves, and surplus thereof, and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation, *except taxes on real estate* held by a Federal land bank or a Federal land bank association *to the same extent, according to its value, as other similar property held by other persons is taxed.*

12 U.S.C. § 2055 (emphasis added). The statute specifically exempts federal land banks from local taxation. It also waives the bank's immunity from nondiscriminatory state and local taxation according to value of real property. The federal statute, however, does not define the terms "real property" or "according to its value." These terms must be interpreted in order to decide whether there is a conflict between Colorado's taxation scheme and 12 U.S.C. § 2055.

■ Whether interests are treated as personalty or realty is a question of local law upon which local statutes and decisions control. *Waggoner Estate v. Wichita County,* 273 U.S. 113, 117, 47 S.Ct. 271, 273, 71 L.Ed. 566 (1927); *United States v. Mays,* 264 F.2d 317, 320 (10th Cir.1959).[1]

---

**1.** *See also Reconstruction Finance Corp. v. Beaver County, Pa.,* 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946). In interpreting a waiver of immunity in the Reconstruction Finance Corporation Act, 15 U.S.C. § 607, *repealed* June 30, 1957, 71 Stat. 647, the court noted that the Act itself did not define real property and that:

> Congress, in permitting local taxation of the real property, made it impossible to apply the

law with uniform tax consequences in each State and locality. 328 U.S. at 209, 66 S.Ct. at 995.

We think the congressional purpose can best be accomplished by application of settled state rules as to what constitutes 'real property,' so long as it is plain, as it is here, that the state rules do not effect a discrimination against the Government, or patently run coun-

Thus, to determine whether the bank's mineral interests are considered real estate, I must look to Colorado law.

*Colorado law*

 Colorado law leaves no room for doubt that plaintiff's mineral interests are real property. When oil or mineral rights have been severed from the surface estate and are owned by persons other than the owners of the surface rights, two separate and distinct freehold estates exist and are subject to taxation. *Union Pacific Railroad Company v. Hanna,* 73 Colo. 162, 214 P. 550 (1923).[2] Colorado's property tax law provides that producing oil and gas leaseholds shall be taxed as real property (Colo.Rev.Stat. § 39–7–102(1)) and that severed mineral estates (nonproducing) are to be valued in the same manner as other real property where such a value can be determined (Colo.Rev.Stat. § 39–1–104(4)). The tax law also includes minerals in its definition of real property. *See* Colo.Rev.Stat. § 39–1–102(14). The facts before us indicate that the bank reserved all or some of the mineral interests beneath certain lands, entitling it to "receive revenues in the form of lease bonuses, rentals, and leasing and production royalties." Complaint at 2. Under Colorado law, these mineral interests are real property and subject to Colorado's ad valorem tax.

*Severance tax vs. property tax*

Having determined that plaintiff's mineral interests are real property under Colorado law, I must examine plaintiff's alternative argument that the tax is, in effect, a severance tax. Plaintiff's Brief in Support of Motion for Summary Judgment at 3–7. The bank argues that the tax is a tax on severed oil and gas production because the "assessment value for purposes of the Colorado Tax is based *solely* upon the selling price of the oil and gas produced and sold during the year prior to assessment." *Id.* at 5. The statute provides, in part, that:

"the assessor shall value such oil and gas leaseholds and lands for assessment, as real property, at an amount equal to eighty-seven and one-half percent of: (a) The selling price of the oil or gas sold therefrom during the preceding calendar year, after excluding the selling price of all oil or gas delivered to the United States government or any agency thereof, the state of Colorado or any agency thereof, or any political subdivision of the state as royalty during the preceding calendar year; (b) The selling price of oil or gas sold in the same field area for oil or gas transported from the premises which is not sold during the preceding calendar year, after excluding the selling price of all oil or gas delivered to the United States government or any agency thereof, the state of Colorado or any agency thereof, or any political subdivision of the state as royalty during the preceding calendar year."

Colo.Rev.Stat. § 39–7–102(1).

 Plaintiff's arguments are without merit. This tax is not a severance tax. First, the fact that assessment for property tax purposes is determined by reference to production does not make the tax a severance tax. Colorado has set forth, both in

---

ter to the terms of the Act. Concepts of real property are deeply rooted in state traditions, customs, habits, and laws. Local tax administration is geared to those concepts. To permit the States to tax, and yet to require them to alter their long-standing practice of assessments and collections, would create the kind of confusion and resultant hampering of local tax machinery which we are certain Congress did not intend. *Id.* at 210, 66 S.Ct. at 995.

**2.** *Hanna* was overruled in part in *Radke v. Union Pacific Railroad Co.,* 138 Colo. 189, 334 P.2d 1077 (1959). That ruling, however, does not affect the law cited herein.

"That mineral reservations, not being exempt by Constitution or statute, are assessable under the laws of this state is beyond question, even if they are of a nominal value only. A mineral reservation is an interest in land, and is 'real estate' by the very terms of our statute." *Union Pacific R. Co. v. Hanna,* 214 P. at 552. *See also Mitchell v. Espinosa,* 125 Colo. 267, 243 P.2d 412 (1952). Colorado's property tax statute also specifically includes all minerals in its definition of real property for property tax purposes. *See* Colo.Rev.Stat. § 39–1–102(14).

its constitution and statutes, specific guidelines and methods for the valuation of various property interests. In fact, in November of 1982, Colorado's constitution was amended to provide that:

"the valuation for assessment for producing mines ... and lands or leaseholds . producing oil or gas ... shall be a portion of the actual annual or actual average annual production therefrom, based upon the value of the unprocessed material, according to procedures prescribed by law for different types of minerals." Colo.Const. art. X, § 3(b) (1982 Colo.Sess. Laws p. 691).

Second, Colorado has a separate severance tax, Colo.Rev.Stat. § 39–29–101 et seq. While some states have chosen to create severance or gross production taxes in lieu of an ad valorem tax on oil and gas leaseholds, Colorado's legislature created the severance tax in addition to the ad valorem taxation scheme. See Colo.Rev.Stat. § 39–29–101(2).

■ Third, plaintiff muddles the distinction between a tax imposed upon its property (the mineral interest) and a tax imposed upon an incident of ownership of that property (e.g. right to receive royalties upon production). A tax on a royalty interest is "not a tax on oil and gas severed from the realty, but is, by its very terms, a tax upon the right reserved in the [petitioners] as lessors and owners of the fee." *Carpenter v. Shaw,* 280 U.S. 363, 368, 50 S.Ct. 121, 123, 74 L.Ed. 478 (1930).[3] Production of oil and gas does not extinguish plaintiff's mineral estate. The bank remains the owner of that mineral estate and possesses all the powers of ownership including the power to convey its interest, execute leases, develop the minerals, and receive bonuses and royalties.

Having examined plaintiff's and defendants' arguments regarding the nature of the taxes imposed upon plaintiff, I find that plaintiff's mineral interests are real property and that Colorado's taxation of those

producing leaseholds under Colo.Rev.Stat. § 39–7–101 et seq. is not in conflict with 12 U.S.C. § 2055. Summary judgment is therefore granted to defendants on plaintiff's first claim for relief.

## II. ACCORDING TO VALUE

In its second claim for relief, plaintiff charges that Colorado's taxation of producing oil and gas leaseholds (Colo.Rev.Stat. § 39–7–101 et seq.) conflicts with 12 U.S.C. § 2055 insofar as it is not based on the actual value of the mineral estate but upon the selling price of the oil and gas produced from that mineral interest. Plaintiff's Brief in Support of Motion for Summary Judgment at 6, 8–9. Plaintiff further alleges, in its fifth claim for relief, that the taxation provision concerning non-producing severed mineral estates (Colo.Rev.Stat. § 39–1–104(4)) conflicts with 12 U.S.C. § 2055 insofar as it includes a provision for a "minimum valuation for assessment of one dollar per acre" when no value can be readily determined. *Id.* at 11. Plaintiff contends that neither tax is related to the actual value of the mineral estate upon which the tax is assessed. I must determine whether the statute's phrase "according to its value" bars application of Colorado's ad valorem tax to plaintiff bank.

■ I note first that there is no federal constitutional requirement that state and local taxation be "according to value;" that requirement is usually imposed, if at all, by state constitutions. Cooley, *The Law of Taxation* § 158 (1924). Referring generally to state constitutional provisions regarding valuation, Cooley notes:

Methods fixed by statute for the valuation of property, where intended to result in a fair valuation of the property, do not violate the constitutional requirements that taxation shall be according to value.

\* \* \* \* \* \*

On the other hand, the legislature has no power to prescribe or declare an arbi-

---

**3.** *See also United States v. Noble,* 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844 (1915) ("The rents and royalties were profits issuing out of the land.

When they accrued, they became personal property; but rents and royalties to accrue were a part of the estate remaining in the lessor.")

trary or artificial value for the property of individuals or corporations, and assess taxes on such valuation.

Cooley, *The Law of Taxation* § 158 (1924).

Plaintiff contends that Colo.Rev.Stat. § 39–7–102 does not satisfy the requirement that taxation be "according to value." In support of this contention the bank argues that the tax is·not based on value because it is, in effect, a severance tax. This argument has been answered above. The bank further argues that the Colorado assessing authorities do not give weight to every factor affecting market value and, in particular, that assessment based on the sales price of oil and gas produced during the prior year bears no relationship to true market value. These arguments are also without merit. There can be no requirement that every factor affecting market value must be included in the assessment process.

█ The Colorado Supreme Court has stated that the rule of taxation according to value has no relation to the methods used for assessing property and is satisfied by any plan which results in fixing a true value of the property. *City and County of Denver v. Lewin,* 106 Colo. 331, 105 P.2d 854 (1940) (quoting from 61 C.J. pp. 150–52 § 89). The court has also held that the basic principle of taxation is not valuation, but equalization. *See Weidenhaft v. Board of County Commissioners of El Paso County,* 131 Colo. 432, 283 P.2d 164 (1955). Furthermore, the Colorado constitution was recently amended and greatly expanded on the subject of valuation. *See* 1982 Colo.Sess.Laws p. 691, Colo.Const. art. X, § 3. I hold that the assessment of producing leaseholds as set out in Colorado's constitution and statutes is taxation "according to value" within the waiver provision in 12 U.S.C. § 2055. I therefore deny plaintiff's motion for summary judgment and grant defendants' cross motion on plaintiff's second claim for relief.

## Colorado's Taxation of Severed Mineral Interests

Plaintiff's fifth claim for relief raises a more difficult question concerning potential conflict between Colorado's ad valorem tax and 12 U.S.C. § 2055. Colo.Rev.Stat. § 39–1–104(4) provides that:

Severed mineral interests are to be valued at thirty percent of actual value in the same manner as other real property. If no value can readily be determined, or if there is no market activity in this type of property, a minimum valuation for assessment of one dollar per acre category of interest shall be used. Where activity in this type of property does exist, the market value should be considered in arriving at the actual value.

Plaintiff contends that although the tax is labelled an ad valorem tax, the minimum valuation provision makes it, in effect, a specific tax and that the bank is therefore not subject to it. Cooley sets forth the distinction between ad valorem and specific taxes:

An ad valorem tax is a tax upon the value of the article or thing subject to taxation. A specific tax is one which imposes a specific sum by the head or number, or by some standard of weight or measurement, and which requires no assessment beyond a listing and classification of the subjects to be taxed. Cooley, *The Law of Taxation* § 52.

The bank asserts that "one or more" of the defendant counties is currently valuing the bank's nonproducing royalty interests on a flat minimum $1.00 per acre basis and that "one or more" of the defendant counties is valuing plaintiff bank's nonproducing royalty interests on a basis other than the minimum $1.00 per acre basis. Plaintiff asserts that such valuation is inconsistent with the mandate in 12 U.S.C. § 2055 that a tax on the bank's real estate be levied "according to its value."

Plaintiff relies on *St. Louis County v. Federal Land Bank of St. Paul,* 338 N.W.2d 741 (Minn.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1712, 80 L.Ed.2d 184 (1984), in which the Supreme Court of Minnesota held that a minimum flat tax placed on the Federal Land Bank of St. Paul's severed mineral interests fell outside the

waiver of 12 U.S.C. § 2055. The court found that such a flat tax never varies according to the location or quality of the mineral interest, and therefore could not rightly be considered an ad valorem tax. "Since the severed mineral interest tax ... is unrelated to value, section 2055 precludes its imposition on the bank's interests." 338 N.W.2d at 745.

■ There is a crucial distinction between the Minnesota and Colorado "flat tax" provisions. Minnesota's statute provides: "Mineral interests ... shall be taxed as provided in this subdivision unless specifically excluded by this subdivision. A tax of $.25 per acre or portion of an acre of mineral interest is hereby imposed and is due and payable annually." Minn.Stat. § 273.13, subd. 2a. Colorado's statute provides that the dollar per acre valuation be imposed only "[i]f no value can readily be determined, or if there is no market activity in this type of property." Colo.Rev.Stat. § 39–1–104(4). The flat per acre valuation is clearly to be used only when a better or more ready assessment of actual value is not possible. Therefore, the requirement that real estate taxes be imposed according to value on mineral interests of federal instrumentalities does not preclude the application of Colorado's tax to plaintiff bank.

I hold that the inclusion of this provision for a flat dollar per acre minimum valuation in Colorado's ad valorem taxation scheme does not violate 12 U.S.C. § 2055. There are several reasons why I make this ruling:

First, the valuation of mineral interests is a complex area and the subject of volumes of literature. It is constantly changing as newer and better technologies for assessing the value of minerals within the ground are developed and as legislatures determine fairer methods of assessment. There can never be a perfect valuation scheme.

Second, I do not find that the use of a dollar per acre minimum valuation within Colorado's ad valorem taxation statute destroys the fundamental nature of this tax as one levied according to value or that it conflicts with 12 U.S.C. § 2055.

Third, plaintiff is unpersuasive in its charge that it is being unlawfully taxed in accordance with this narrow provision. In its initial complaint, plaintiff charges that during 1982 its mineral interests were taxed $42,537.42 under Colo.Rev. Stat. § 39–7–101 *et seq.* In its amended complaint, plaintiff asserts that "one or more" of defendant counties has applied the flat per acre valuation, Section 39–1–104(4), but plaintiff does not describe to what quantity of acreage it was applied or reveal the total tax levied according to Colo.Rev.Stat. § 39–1–104(4). Nor does plaintiff suggest an alternative tax based on "value." In short, it appears that plaintiff, in its fifth claim, has searched for a technicality upon which to have me interpret Colorado's tax on severed mineral interests into invalidity.

I grant summary judgment on behalf of the defendants on plaintiff's fifth claim for relief.

### III. COLORADO'S UNIFORMITY REQUIREMENT

■ Plaintiff asserts in its third claim for relief that Colorado's tax violates the uniformity requirement of Article X, Section 3, of the Colorado constitution.[4] Colorado case law holds that Article X, Section 3, simply requires that all persons who are members of any class shall receive equal treatment as other persons within the same class. *American Mobilehome Association, Inc. v. Dolan,* 191 Colo. 433, 553 P.2d 758 (1976); *City and County of Denver v. Lewin,* 106 Colo. 331, 105 P.2d 854 (1940); *M.H.C. Realty Corporation v. Board of County Commissioners,* 31 Colo.App. 564, 506 P.2d 762 (1972). Plaintiff does not allege in its complaint that it is being treated differently from other holders of mineral interests. Plaintiff asserts that the dif-

---

**4.** Art. X, Sec. 3. (1)(a) "Each property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article located within the territorial limits of the authority levying the tax. The actual value of all real and personal property not exempt from

taxation under this article shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property not exempt from taxation under this article."

 

ference in the taxation of its interests in producing properties and nonproducing properties violates the equalization provision of Colorado's constitution. Colorado case law does not provide such an interpretation of the equalization requirement. Plaintiff's motion for summary judgment on its third claim for relief is denied. Defendant's cross motion is granted.

## IV. IMPLIED EXEMPTION

■ Plaintiff's fourth claim for relief is also without merit. Plaintiff asserts that the exclusion of the selling price of oil and gas delivered to the United States government in the valuation of oil and gas interests (see Colo.Rev.Stat. § 39–7–102) is, in effect, a recognition that the bank is exempt from taxation of its mineral interests. This is not what the statute says and I will not read such language into it. Therefore, defendant's summary judgment motion on plaintiff's fifth claim for relief is granted.

It is therefore ORDERED that plaintiff's motion for summary judgment is denied and defendants' cross motion is granted. Defendants shall have their costs herein expended.