[No. 4400.]

THE PILGRIM CONSOLIDATED MINING COMPANY V. THE
BOARD OF COUNTY COMMISSIONERS OF
TELLER COUNTY.

[No. 4401.]

THE HART GOLD MINING & LEASING COMPANY V. THE
BOARD OF COUNTY COMMISSIONERS OF
TELLER COUNTY.

[No. 4402.]

THE MOON ANCHOR GOLD MINING COMPANY V. THE
BOARD OF COUNTY COMMISSIONERS OF
TELLER COUNTY.

1. **Taxes and Taxation—Correction of Erroneous Assessment—Jurisdiction.**

Where petitioners to the board of county commissioners to correct errors in the assessment of property concede and show by their petitions that the property in question is assessable property, the board has jurisdiction to decide the controversy and the district court also has jurisdiction to determine the matter on appeal from the action of the board.

2. **Same—Appellate Practice—Statutory Construction.**

If the decision of a district court affirming the action of the board of county commissioners denying petitions to correct errors in the assessment of property is reviewable at all, it is only reviewable by the supreme court when there is present some one or more of the elements which the court of appeals act requires shall be present in order to give the supreme court jurisdiction. The supreme court has not jurisdiction when such decision turns upon the construction of a statute of the state.

3. **Same.**

Upon petition to correct errors in the assessment of property for taxes, if it should appear that the assessment is contrary to the letter or meaning of the statute, it must be set aside, and the decision should be based upon that ground although the assessment might also be held invalid because inhibited by the state or national constitution, and opinion upon the constitutional question should be withheld.

4. **Taxes and Taxation—Mines and Mining—Valuation.**

The general revenue act, for the purpose of taxation, divides mining property into two classes—producing and non-producing mines; and having provided a specific method of ascertaining the valuation of producing mines without specifying any method for non-producing mines, in ascertaining the value of non-producing mines the assessor must resort to the same method employed in fixing the value of other real estate.

5. **Same.**

In assessing non-producing mines for taxes, the assessor may not put a greater valuation upon such mines than the minimum valuation placed upon similarly situated and more valuable producing mines by the specific method prescribed in the revenue act.

*Appeals from the District Court of Teller County.*

Mr. H. M. BLACKMER, Mr. KARL H. SCHUYLER,

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. W. W. FIELD, for appellants.

Mr. SCOTT ASHTON, Mr. FRANK J. HANGS and Messrs. THOMAS, BRYANT & LEE, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

A large number of owners of assessable non-producing mining claims situate in the Cripple Creek mining district, Teller county, claiming that the county assessor had unjustly and erroneously assessed the same for taxation, availed themselves of the remedy afforded in such circumstances by an act of the general assembly found in Session Laws 1889, page 24, and filed thereunder their respective petitions with the board of county commissioners of Teller county, asking for a correction of the errors alleged to have been made. As the facts of each case are substantially the same, and the same principles of law apply, the three causes which are before us upon this review were selected as test cases, and upon a hearing had before the commissioners the petition was denied, and upon appeal to the district court of Teller county the decision was the same, and the unsuccessful parties are prosecuting an appeal.

Unlike *The Board v. Denver Union Water Co., post,* p. 382, decided at this term, the petitioners, conceding and so showing by their petitions, that the property in question is assessable property, the board and also the district court, had jurisdiction to decide the controversy. As was said in the case just referred to, there may be some doubt as to whether the statute upon which this proceeding rests authorizes, or contemplates, litigation beyond the district court, since neither the act itself, nor any subsequent one to which our attention is called, has made any provision for a

review of its decision. That point, however, has not been made here, and so we withhold definite expression upon it. But if it be conceded that the decision of the district court is reviewable by the court of appeals or by the supreme court, either on a writ of error or by appeal, the supreme court has not cognizance of it unless there is present some one or more of the elements which the court of appeals act requires shall be present in order to invoke its appellate jurisdiction. The only element claimed to be involved is that a construction of a provision of the state and federal constitution is necessary to a determination of the cause. Upon the oral argument the court of its own motion suggested that there was some doubt as to whether such constitutional question was involved, and in the briefs filed in response to that suggestion counsel upon both sides have confined their argument as to the jurisdictional feature to the constitutional question just mentioned. For the purposes of the opinion we may safely assume, but not so decide, that if a constitutional question is necessary to a determination of the case, the jurisdiction of this court is properly invoked, for we are of opinion that the decision turns upon a construction of the statutes of the state.

Appellants contend that the assessments in question are contrary to section 3 of article X of our state constitution, in that they lack the elements of uniformity and justness which that section was intended to secure, and their imposition also contravenes that clause of the fourteenth amendment to the federal constitution which guarantees to every citizen the equal protection of the law. The appellees take the contrary position.

If it should appear that the assessments are contrary to the letter or meaning of the statute, they must be set aside, even though they might also be

held invalid because inhibited by the state or national constitution, in which case the decision should be put upon the former ground, and opinion upon the constitutional question withheld. Here again, as heretofore in *Board, etc., v. Denver Telephone Co.,* 28 Colo. 401, and other similar cases, the reasons which we are constrained to give for concluding that a constitutional question is not essential to a determination of the case indirectly, though possibly effectually, dispose of the matter in dispute.

Our general assembly passed a statute in 1887 (Session Laws 1887, 340) providing for the taxation of mines and mining property, which was held valid by this court and its meaning construed, so far as the questions then before the court required, in *People ex rel. v. Henderson,* 12 Colo. 369. Among other things, it was there said:

"In effect, sections 1 and 3 of the act, taken together, divide this species of property into two classes, viz., *first,* the mines or mining claims referred to in section 3, *i. e.,* those which, during the preceding fiscal year have had a gross output aggregating upwards of $1,000 in value; and, *second,* all the remaining or non-producing claims, without reference to value. For reasons satisfactory to the legislative mind, mines yielding something, but less than $1,000, are included among the non-producers. As to the first class a specific method for determining valuations in relation to mines belonging thereto is pointed out, but as to the second class no rule for assessment is expressly provided. In the absence of such express provision, however, we must assume that the legislature intended to have mines and mining claims belonging to this class assessed in the manner specified by statute for the assessment of other real estate."

And again, in summing up the matter, it was said:

"Therefore, by the act in question, we are advised: *First,* that all mines and mining claims containing precious metals are subjected to taxation; *second,* that this species of property is divided into two classes, viz., those mines producing upwards of $1,000 during the fiscal year preceding, and those producing less than that sum or nothing at all; and *third,* that a specific method is provided for the valuation of mines belonging to the first class, while all mines and claims included in the second class are to be assessed in the manner indicated by law for the assessment of other taxable real estate."

Notwithstanding these expressions, appellants strenuously contend that the court did not intend to, and did not, decide that, for purposes of taxation, mining property was by this act divided into two classes, viz., producing and non-producing mines. We do not think it necessary to dwell upon this argument. We cannot agree with counsel. Nothing is plainer than that such was the decision, and we adhere to it now for the reasons there assigned. But that decision also settles this controversy against the validity of the assessments, and that, too, upon the ground that they are contrary to the provisions of the general revenue laws as affected by the statute there construed. An assessment may be invalid because it is unjust and erroneous, but it may be bad for error or mistake alone. The thing which vitiates it may come both within the constitutional and statutory ban, or it may only contravene a statute. If an assessment is contrary to a statute, it is just as invalid as if inhibited by the constitution. So if the assessments here complained of cannot be sustained under the general revenue law or the act specially applicable to mining claims, there is no necessity for going fur-

ther to inquire if the constitution also makes them vicious.

The doctrine of the Henderson case makes these assessments erroneous and unjust. When the general assembly classified mining property for purposes of taxation into producing and non-producing mines, it must have been because, in its judgment, the methods for ascertaining the value of one class were not calculated to secure a just valuation of the other. It therefore, in this act, prescribed a specific method, based upon a certain proportion of the gross output, for securing the valuation of producing mines, and by its omission to specify a method for non-producing mines indicated that for ascertaining their valuation the assessor must resort to the same methods employed in fixing values upon other taxable real estate.

It is common knowledge in mining countries that, as a general thing, mining property is valuable only for the ores it contains. A mine which produces ores is of more value intrinsically, and also for taxing purposes, than one which yields nothing at all. The general assembly had such knowledge, and when it passed this act must be presumed to have had these facts in the legislative mind. It is not to be supposed that it contemplated that the methods it furnished in the general revenue law, and which this court has said must be employed, to ascertain the valuation of a non-producing mine would, or could, result in an assessment larger in amount than that made in accordance with the specific instructions it prescribed for securing the valuation of a more valuable producing mine similarly situated. In other words, when the general assembly, by the specific methods it provided therefor, limited the valuation which the assessor can place upon a more valuable producing mine, the assessing officer may not, by employing the

methods adapted to other real estate, put a greater valuation upon a less valuable non-producing mine alongside of, or similarly situated to, the former.

This construction was not expressly put upon the special statute in the Henderson case, for there was then nothing before the court requiring, or permitting, such expression of opinion; but we could not hold the act valid unless this meaning is given it. Here we are confronted with assessments upon mining claims falling under one of the two classes into which the statute has divided mining claims, which are many times greater than assessments made upon similarly situated mining claims of the other and intrinsically more valuable class. The true test as to the constitutionality of a statute is not what has been, but what may be, done under it, and if such results as are here manifested may be reached under the practical operation of this statute, it would clearly violate both the provisions of the state and federal constitutions already noted.

By giving it the meaning above indicated, it may be sustained. In doing so it is virtually held that the assessments here complained of are contrary to the statute law of the state. As well expressed by counsel, we say that under the statutes of this state applicable thereto, unproductive mining claims may not be assessed at a higher valuation per acre than the minimum valuation per acre of productive mining claims similarly situated. In brief, our conclusion is that the assessments under consideration are erroneous because they are in conflict with the intent and meaning of our general revenue laws, and the act specially applicable to assessments of mining property. It is not necessary, therefore, to determine whether they are also erroneous or unjust on account of a conflict with some provision of the state or federal constitution. There being no element present in

the case which, under the court of appeals act, invokes our jurisdiction, the appeal is dismissed for want of it.                                              *Appeal dismissed.*

Mr. JUSTICE STEELE not participating.