No. 12,962.

COLORADO TAX COMMISSION *v.* MIDLAND TERMINAL RAILWAY COMPANY.
(24 P. [2d] 745)

Decided June 26, 1933. Rehearing denied August 7, 1933.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. FRED

A. Harrison, Deputy, Mr. George A. Crowder, Deputy, Mr. Golding Fairfield, Mr. W. Richard Means, for plaintiff in error.

Mr. C. C. Hamlin, Mr. John A. Carruthers, for defendant in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

The Colorado tax commission has brought here for review a judgment of the district court of El Paso county reducing to $144,862 the El Paso county portion of the tax assessment of the Midland Terminal Railway Company for the year 1930, which as to such portion was fixed by the commission at $274,630. From this assessment of the commission an appeal had been taken to that court, after the company had filed a petition under C. L. '21, section 7287, which petition was heard and denied, and the commission's decision affirmed.

The lower court obviously misapprehended its proper function as applied to a case of this kind. It rejected the commission's assessment and substituted its own. Its reasoning seems to have been this: If it believed the assessment to be too high and the methods of the commission to be less satisfactory than one it might itself use, it could make a different assessment by a method altogether separate and apart from the methods employed by the commission. Under the attitude thus adopted at the trial below, no assessment established by the tax authorities would ever be valid or final if a court chose to constitute itself an independent and superior assessing body. That would be arrogating to a judicial agency the powers of a purely administrative subdivision of the executive department charged by law with the duty of determining in its best judgment a valuation which might serve as a base for the calculation of general taxes.

However, the courts have no right arbitrarily to overrule the conclusions or correct the errors of an assessing officer. In connection with appeals from assessments other than those of the commission, the following provisos clearly reveal the legislative intention: *"Provided, however, That the said court shall not review or give relief against an assessment unless it shall appear manifestly excessive, fraudulent or oppressive,"* C. L. '21, section 7292; *"Provided, however, That the said court shall not review or give relief against an assessment merely because excessive, unless it shall appear manifestly fraudulent, erroneous, or oppressive,"* *Id.,* section 7293. It would be strange indeed if the assessments fixed by a special body like the Colorado tax commission were given less consideration or became more vulnerable than those fixed by county assessors or boards of county commissioners acting as ex officio reviewers of assessments. The reason underlying the principle represented by the above quoted provisos appears all the more logical and cogent in support of applying a principle no less strict in favor of assessments by the commission. The members of the commission are selected for the express purpose of helping to administer the statutes in relation to taxing operations. In the very nature of things they become experts in their field. Their duties are onerous. Of course the officers are not infallible. No tax system that has yet been devised eliminates all errors of judgment made by such a body as the commission, or enables the work of the assessing officers to be verified by accurate scientific tests. All that can be expected under our system of government is that these officers shall act honestly upon the facts before them and in accordance with the law. It is not for the court to control the reasonable discretion of the commission or attempt to correct mere errors in the exercise thereof.

We do not depend upon express statutory provisions to guard against undue judicial interference with the assessing activities of the executive department. It

is not necessary at this time to decide whether the express provisos in sections 7292 and 7293 literally govern the proceedings when an appeal is taken to the district court under C. L. '21, section 7287, as claimed by counsel for the commission and denied by counsel for the company. In Colorado there is a definite and well-settled presumption that an assessment made by the regular assessing officers is correct, and cannot be overthrown except by clear and convincing evidence adduced by him who assails it. *Phillips v. Commissioners,* 83 Colo. 82, 86, 262 Pac. 523, 525; *Union Pacific Co. v. Hanna,* 73 Colo. 162, 171, 214 Pac. 550, 554; *Singer Mfg. Co. v. Denver,* 46 Colo. 50, 53, 103 Pac. 294. This doctrine is in accord with the overwhelming weight of authority. 3 Cooley, Taxation (4th Ed.), §1073.

Viewing the record in the light of what has been said, one cannot escape the conviction that the evidence before the district court is insufficient to justify its judgment. Early in the hearing the trial judge said: "The way I see it is, the Court is asked to fix the valuation that is correct under the statute. The Court is not bound by what the Tax Commission found, but takes that into consideration in trying to arrive at the value of this railway." The whole attitude of the trial court indicated that no presumption of official regularity was to be indulged, that the case was being tried de novo, and that the commission was expected to bear the burden of proof. The evidence given on behalf of the company fails to impugn the judgment exercised by the commission and fails to raise even a bare suspicion of bad faith or caprice. The evidence introduced by the company consisted largely of opinions. These opinions covered a wide range: Witnesses testified as to the price the road would probably bring at a "fair voluntary sale," taking into consideration probable earnings until the road is junked, and the salvage from the junk; also as to probable life of the road from the standpoint of profitable operation; and several told of the physical and economic losses and de-

preciation of the Cripple Creek district, through which the road runs. There was likewise testimony as to the price paid by one Corley for a parallel road at receiver's sale in 1922, and the price paid by the company for a 28-mile stretch of the old Midland road into Colorado Springs in 1921. Counsel for the company put on the witness stand for cross-examination under the statute one of the members of the commission. He testified that he had given consideration to the decision rendered by the then presiding judge in a previous case of the same kind, but for another year; that this decision impelled him to use the method of capitalizing the net earnings at 9% so as to produce the lowest figure he could; that depreciation of the roadbed was not considered, because in arriving at the valuation of railroads you consider that roads have to be kept up to a certain operating plane for safety and for the purpose of transporting trains, one item offsetting the other. But, he said, if they knew of any depreciation in equipment, they took it into consideration. The witness further stated that consideration was given to the future of the road, the hazardous country in which the road operates, the fact that the road earns less on the mining industry because of depletion of ore bodies. If there had been bonds, they would have been taken into consideration. If there had been a market value for the stock, that would have been taken into consideration. The commission considered use and capability of use of the property, and cost of equipment or replacement cost new; but if the commission had figured on a replacement basis it would have been "clear out of reason"; for it would have been impossible to replace the equipment at its original cost. If the road were considered in the same class as the Rock Island and the U. P. —and the witness does not so consider it—the assessment would be higher than the commission fixed it. The net-earnings item used in the commission's calculation, according to its member testifying as stated, is $83,606 and is admitted to be correct. Capitalized at 7%, which is the

percentage used for other railroads, the valuation would be over $1,000,000, an increase of more than $150,000 over the assessment as made by the commission. If the conditions of the Cripple Creek district had not been taken into consideration, this witness declared, the assessment would have been in excess of $2,400,000 on a 7% basis figured over a five-year period. (On a 10% basis for a five-year period, he said, the capitalization and assessment would exceed those actually figured by the commission at 9% for the single year.)

None of the testimony thus given by the commission member under statutory cross-examination was seriously contradicted. There was no attempt to question the good faith or integrity of any commission member. No testimony was offered to prove that the commission at any of its hearings failed or refused to consider whatever evidence was presented by the company. It is not shown what, if any, particular testimony was before the commission along the lines covered by the company's witnesses as above stated.

Our conclusion is that the company failed to sustain its burden of overcoming the presumption of correctness attaching to the commission's assessment. The judgment of the district court must be reversed, and the case remanded with directions to enter a judgment affirming the assessment.

Judgment reversed, and case remanded with directions.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL dissent.