## No. 14,652.

CITY AND COUNTY OF DENVER ET AL. *v*. LEWIN, TRUSTEE.
(105 P. [2d] 854)

Decided June 3, 1940. Rehearing denied September 23, 1940.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, Mr. GLENN G. SAUNDERS, Mr. WAYNE D. WILLIAMS, for plaintiffs in error.

Messrs. DINES, DINES & HOLME, Mr. ROBERT E. MORE, Mr. MILTON J. KEEGAN, for defendant in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Deputy, amici curiae.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS controversy relates to a proceeding under section 115, chapter 142, '35 C.S.A., brought by defendant in error, to whom we hereinafter refer as taxpayer, to determine whether an assessment of his real estate for the year 1938 is manifestly excessive, fraudulent, oppressive, discriminatory and confiscatory.

The property in question is lots one and two, block 207 (Plaza Hotel), located at the corner of Fifteenth and Tremont streets in Denver. The assessor valued the property in question as follows: Valuation of land,

$58,530; valuation of improvements, $25,490; total valuation, $84,020.

The court, after a hearing extending over a period of approximately six weeks, found that the assessment of $84,020 was manifestly excessive in the sum of $49,011.67, and entered judgment in favor of taxpayer in the amount of $1955.57, with interest as provided by law. Plaintiffs in error, hereinafter designated as the city, or assessor, assign error and seek reversal.

The record discloses that the improvements are valued separately throughout "the territorial limits of the authority levying the tax," at their cost of production, less depreciation. This was followed in the valuation of the Plaza Hotel, and the assessment before us is based thereon. The assessed valuation of the improvements is $25,490, based upon a reproduction cost of $90,000, with due allowance for depreciation since 1904. The building in question is situated in the downtown business area, in which a general revaluation was had in 1926. This revaluation related to land values and was based on taking the corner of Sixteenth and Stout streets as a starting point, and relating thereto all other land values in the downtown business area. The fairness of the 1926 basic value survey is not challenged. Yearly adjustments were made by considering various elements of value in this area, when justified by changed circumstances. About 1932 a general reappraisal of values was made in this area, using the same method, perhaps not with the same detail as in the 1926 survey, by relating values to specific corners, consulting real estate men, and taking into consideration traffic count and other checks. The board of equalization made a general reduction in land values in 1931 and 1933 amounting to a total of fifteen per cent, in which the land in question was a beneficiary. Some slight adjustment was made in the valuation of the improvements thereafter. Taxpayer, to sustain his complaint, presented voluminous testimony relating to numerous properties on Fifteenth

street, from Broadway to Arapahoe street, not including the Gas and Electric and the Denver Dry Goods buildings, and properties located in other parts of the city, such evidence consisting primarily of statistics showing the net and gross income of each property, and other data to show that this part of the downtown area, which counsel for taxpayer designate as a district, has suffered in business volume which has been steadily receding since 1928. Some of this data was presented to the assessor when taxpayer made the objections required under section 115, supra.

■ Because of the importance of the case, we first direct attention to certain basic legal concepts applicable to taxation, as follows:

"The power of taxation is an essential and inherent attribute of sovereignty, belonging as a matter of right to every independent government. It is possessed by the government without being expressly conferred by the people. * * * Constitutional provisions relating to the power of taxation do not operate as grants of the power of taxation to the government but instead merely constitute limitations upon a power which would otherwise be practically without limit. * * *." 1 Cooley on Taxation (4th ed.), pp. 149, 150, §57. "The legislature must determine all questions of state necessity, discretion or policy involved in ordering a tax and in apportioning it; must make all the necessary rules and regulations which are to be observed in order to produce the desired returns, and must decide upon the agencies by means of which collections shall be made. The courts cannot review the determination of the legislature in regard thereto. * * * So long as the legislation in form and substance conforms to the constitution, and is not colorable merely, but is confined to the enactment of what is in its nature strictly a tax law, and so long as no constitutional limitations are exceeded, or the constitutional rights of the citizen violated in the directions prescribed for enforcing the tax, the legislation is of

supreme authority, and the courts, as well as all others, must obey. Taxes may be, and often are, oppressive to the persons and corporations taxed; they may appear, to the judicial mind, unjust and even unnecessary but this can constitute no reason for judicial interference." Ibid., pp. 165, 167, §67. "The taxing power of the state is exclusively a legislative function, and taxes can be imposed only in pursuance of legislative authority, there being no such thing as taxation by implication. Subject to the fundamental or organic limitations on the power of the state, the legislature has plenary power on the matter of taxation, and it alone has the right and discretion to determine all questions of time, method, nature, purpose, and extent in respect of the imposition of taxes, the subjects on which the power may be exercised, and all the incidents pertaining to the proceedings from beginning to end; and the exercise of such discretion, within constitutional limitations, is not subject to judicial control. * * *." 61 C.J., pp. 81-83, §10. "Absolute or perfect equality and uniformity in taxation, being impossible of attainment, is not required, and so long as there is substantial uniformity in the application of taxing statutes, it has been held that the constitutional provisions relating to equality and uniformity are not violated. * * * The test in all legislative enactments affecting taxation is that their aim be toward equality and uniformity, by approximation at least, and the courts will not pronounce a statute invalid on this ground unless it appears that it was framed on a plan or principle not calculated to produce equality and uniformity, or that its administration will result in such flagrant injustice as to evidence an entire disregard of the constitutional requirement; nor will they interfere to grant relief except where the inequality is the result of a misapplication of the law, or of such gross carelessness as to imply fraud, or of a willful discrimination." Ibid., pp. 105, 106, §33. "The rule of taxation according to value has no direct relation to the methods prescribed

for appraising and assessing property, and is satisfied by any plan or system which is intended and calculated to result in fixing the fair and true value of the property. * * * A statute is invalid which sets up an arbitrary and inflexible standard for the valuation of property, such as to prevent the assessing officers from exercising their judgment and knowledge upon it. * * *." Ibid., pp. 150-152, §89. "The due process clause in the federal constitution contains no specific limitation upon the right of taxation in the states, and statements are to be found in judicial opinions to the effect that the Fourteenth Amendment of the federal constitution, and similar provisions of the state constitutions, have no reference to, and constitute no limitation on, the taxing power of the state governments. * * *." Ibid., p. 156, §95. "In fixing the valuation of property, a board of assessors and the assessor may take into consideration their own knowledge and information acquired by their investigations, and may compare the value of the property with other property of the same character so as to form an honest judgment as to the value to be fixed. * * *." Ibid., p. 586, §728. "Courts are reluctant to disturb values fixed by taxing authorities, and when it can be reasonably done, acts of public officials in raising revenue should be sustained. * * *." Ibid., p. 611, §746. "The legislature may determine the method or manner in which different forms of property may be valued for taxation, and the method prescribed by it must be followed, unless shown to be impossible or impracticable in the particular case. * * *." Ibid., p. 638, §789. "While a tax assessor has a wide discretion in valuing property, and an error or mistake on his part is immaterial where it does not result in an excessive or discriminatory valuation, nevertheless he must exercise his discretion prudently, and make valuations which are not arbitrary, but are fair and impartial, and the result of honest judgment, rather than of mere will. An assessment will not be held void by reason of an

excessive valuation placed on the property by the assessor, where it was the result of an error of judgment on his part and not of dishonesty or want of good faith; but it is otherwise if the overvaluation was made fraudulently or maliciously, although the mere fact of an excessive valuation is not sufficient to establish fraud or absolute nullity, unless it is so grossly excessive as to indicate that the assessor must have acted dishonestly. * * *." Ibid., p. 641, §791. "In estimating the value of land, an assessor should take into consideration all of its elements or incidents, such as location, quality, condition, improvements, and use, which affect market value or would influence the mind of a purchaser. Also, the adaptability or availability of the land for a particular use may be considered in so far as it enhances the present actual value of the land. * * *." Ibid., pp. 643, 644, §793. "Except in some jurisdictions, the rental or net income producing-capacity of real property which is rented or produces income is an important element to be considered in determining the actual or market value of the property for purposes of assessment, but it is not the only element to be considered, and in many instances the amount of rental received would be wholly misleading." Ibid., pp. 644, 645, §794. "Improved real estate is to be valued not according to its intrinsic value, but according to its market or selling value, which is to be arrived at by considering all of the various circumstances which affect it. The original cost of construction, or the estimated cost of reproduction, less depreciation, or, in other words, the present structural value, of either a commercial or residential building may be considered; but it may be considered only in arriving at market value; it is not to be adopted as a sole or conclusive criterion of value; and it is not to be given undue weight. * * *." Ibid., pp. 645, 646, §795.

■■ "Whenever the legislature provides for an appeal to a court from a decision of a reviewing board or officer, the court, no matter what may be its grade, is

one of limited jurisdiction for the purpose, and must keep strictly within the letter of the statute defining its power. * * *." Ibid., p. 836, §1054; *Board of Com'rs v. Denver Union Water Co.,* 32 Colo. 382, 76 Pac. 1060; *Pilgrim Consol. Min. Co. v. Teller County,* 32 Colo. 334, 76 Pac. 364. "And the court will not disturb the decision of the assessors unless it is clearly erroneous, or, unless as required by statute, the assessment is manifestly excessive, fraudulent, or oppressive. * * *." 61 C.J., p. 864, §1098; *Phillips v. Board of Com'rs,* 83 Colo. 82, 262 Pac. 523; *Union Pacific R. R. Co. v. Hanna,* 73 Colo. 162, 214 Pac. 550; *Singer Mfg. Co. v. Denver,* 46 Colo. 50, 103 Pac. 294.

██ The only constitutional limitation upon the taxing power of the state is contained in section 3, article X, of our Constitution, the pertinent part of which is as follows: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal; * * *."

The following statutory law has some bearing on this controversy: "All taxable property shall be listed and valued each year, and shall be assessed at its full cash value; land to be listed and valued separate and apart from the personal property and improvements thereon." '35 C.S.A., c. 142, §2. "In determining the true value of taxable property, except as otherwise provided in the revenue law of 1902, the market value shall be the guide. As to all classes or items of property in respect to which it cannot be fairly said to have market value, the price it would bring at a fair voluntary sale thereof, the value of the use thereof, and the capability of use, together with any other just method of determination, may be considered by the assessor. * * *." Ibid., §66.

"In all cases where the amount of the total assessed valuation assessed against such taxpayer exceeds the

sum of $7,500, every objection and statement of grievance pursuant to the foregoing section shall be in writing, stating the particular grounds of such objection, or the particular facts wherein such grievance consists; and if such objection be overruled by the assessor, in whole or in part, he shall state briefly in writing the grounds of his refusal, and the taxpayer complaining may appeal from his decision to the district or county court of the county wherein the property is assessed on or before the first Monday in January following said assessment. Such appeal shall be perfected in the same manner as now provided by law for appeal from boards of county commissioners, upon the disallowance of a claim against the county; but before the appeal shall be allowed the petitioner shall pay to the county treasurer the amount of the tax levy pursuant to said assessment, and in case the appellant shall succeed in the county or district court, in whole or in part, the treasurer shall refund such tax according to the judgment of such court. And in all cases where any tax so collected shall be refunded, the taxpayer shall be entitled to receive interest on the amount refunded at ten per cent per annum from the time of payment thereof; provided, however, that the said court shall not review or give relief against an assessment unless it shall appear manifestly excessive, fraudulent or oppressive.

"Both the assessor and the said county or district court, in considering such statement of grievance by any such taxpayer, shall take into consideration the value as fixed by the assessor upon other similar assessable property similarly situated." Ibid., §115.

"In all cases where the amount of the total assessed valuation assessed against such taxpayer does not exceed the sum of $7,500, * * * the said court shall not review or give relief against an assessment merely because excessive, unless it shall appear manifestly fraudulent, erroneous, or oppressive." Ibid., §116.

Sections 2, 66, 115 and 116, supra, are a portion of the regulations adopted by the legislature, as authorized under section 3, article X, of our Constitution. It is clear that the enactment of such regulations, necessary to a just valuation, is a legislative and not a judicial problem. A trial court, in reviewing assessments, is exercising a legislative function in an administrative sense, and is controlled by the regulations promulgated by the legislature in the adoption of general laws. Authority already has been cited that the court is strictly confined to such regulatory power. *Board of Com'rs v. Denver Union Water Co.,* 32 Colo. 382, 76 Pac. 1060; *Pilgrim Consol. Min. Co. v. Board of Com'rs,* 32 Colo. 334, 76 Pac. 364. Its judicial power is limited solely to the interpretation of the law, whenever a controversy requires it. No rule of tax law is better settled than that a court should not substitute its judgment for that of the assessor. *Great Northern Railway Co. v. Weeks,* 297 U.S. 135, 56 Sup. Ct. 426, 80 L. Ed. 532; *Colorado Tax Com. v. Midland Terminal Ry. Co.,* 93 Colo. 108, 24 P. (2d) 745; *Colorado Tax Com. v. Colorado Central Power Co.,* 94 Colo. 287, 29 P. (2d) 1030.

■ Involved, primarily in this litigation, is the question of whether the assessor has acted fairly and honestly in overruling the taxpayer's objections, and within the constitutional limitations of uniformity in making the assessment. Mere error of judgment or over valuation is not sufficient to permit a review, nor is exactness necessary in working out a relative uniformity. *Great Northern Ry. Co. v. Weeks, supra; Colorado Tax Com. v. Colorado Central Power Co., supra.* Unless the record discloses that the assessor had no basis in law to make the 1938 assessment, or that he arbitrarily overruled the objections thereto, it must be sustained.

■ A misconception of the issues before the court is disclosed in the opening statement of counsel for taxpayer, in which they said there are but two general issues involved: first, uniformity, and, second, "assess-

ment must be made at the actual value of the property." They were right as to the first, but wrong as to the second. The second issue is whether the assessment was manifestly excessive, fraudulent or oppressive. The court has no authority to make an assessment or fix a valuation. Taxpayer's challenge relates primarily to the acts of the assessor, and this misconception of his counsel led to considerable confusion in the introduction of evidence and an erroneous conception of the duty of the trial court. This is further indicated by other language used by counsel for taxpayer in their opening statement, such as "The actual value of these properties can be determined in one and only one accurate method—a reference to the income of the property." And, "The final question will be what is the actual value of any of these nine properties?"

■■ To determine whether the assessor, in overruling taxpayer's objections, acted honestly and fairly upon the facts before him, we look to the record. The presumption of official regularity applies to all of his acts. He was presented with numerous statistics of net income of numerous properties, primarily those on Fifteenth street, prepared by experts representing fifty-one taxpayers on that street seeking a reduction in taxes. The problem presented to him required considerably more than the assessment of the Plaza Hotel property; it involved a resurvey of all of the property on Fifteenth street, from Broadway to Arapahoe street. This necessarily called for a further consideration by the assessor of the assessments in all of the downtown area. The one legislative mandate necessary for the assessor, as well as the court, to consider when objections are made, is found in the following language of section 115, supra: "Both the assessor and the said county or district court, in considering such statement of grievance by any such taxpayer, shall take into consideration the value as fixed by the assessor upon other similar assessable property similarly situated." One purpose of this provision is to

insure uniformity, the only constitutional requirement in this state which must be satisfied. It could not be satisfied by a reduction of taxpayer's assessment or the assessments on Fifteenth street. Such action would have violated uniformity as related to assessments in the other downtown areas. For taxation purposes, especially since the 1926 survey, the entire downtown area has been treated as one district, or "the same class of subjects," under section 3, article X, supra. Confronted by such problem, what did the assessor give as his reason for overruling the objections of taxpayer? We quote from exhibit B attached to taxpayer's complaint, and upon which he relies, being a letter from the assessor to the chairman of the board of equalization of Denver, as follows:

"Their claim is 'that said valuations and assessments are illegal, erroneous, excessive, discriminatory, and confiscatory, and greatly exceed the true value of said property.' It is true that they have provided figures to substantiate their claims as to the properties being unprofitable investments. A similar condition, I am satisfied, exists on a great many other properties involved in our downtown district, a good many on which we do not at this time have figures comparable to those submitted by the Fifteenth Street Owners.

"In my opinion there is only one way to solve this problem, and that is to have a complete survey made of the downtown district for the purpose of reappraisal and placing valuations upon the properties that we feel will be equitable and fair for assessment purposes."

In submitting this letter to representatives of taxpayer, the chairman of the board made the following statement:

"We have considered your request for reduction of assessment on 15th Street property, and have discussed the matter with the Assessor. It is our opinion that there has been a general decline in value of downtown business property and that there should be an immedi-

ate revision of the assessments, but we feel it would be unjust to make a downward revision on assessments on a small part of the area, as you have requested.

"We have requested the assessor to make an immediate survey of the downtown area with the idea of making a general equalization of taxes to take effect in the coming year. We are enclosing a letter from him assuring us that such action will be taken."

Was the action taken by the assessor, in overruling the objections, arbitrary? In view of the problem that the assessor had before him, that the objection involved a valuation and reassessment of the entire downtown area for 1938, and that it required a reappraisal of considerable property, we cannot say that it was. That it was made in good faith is evidenced by the fact that, following this reappraisal, the assessment for 1939, involved here, was reduced twenty-five per cent. That the court, in the early part of the trial, had a correct conception of his authority appears from this statement, made on the first day of the hearing: "I believe that the court must determine, as I stated before, first, whether there is an abuse of discretion." In *Colorado Tax Com. v. Midland Terminal Ry. Co., supra,* speaking through Mr. Justice Bouck, we said (pp. 110, 113): "No tax system that has yet been devised eliminates all errors of judgment made by such a body as the commission, or enables the work of the assessing officers to be verified by accurate scientific tests. All that can be expected under our system of government is that these officers shall act honestly upon the facts before them and in accordance with the law. It is not for the court to control the reasonable discretion of the commission or attempt to correct mere errors in the exercise thereof. * * * There was no attempt to question the good faith or integrity of any commission member."

See, also, *Colorado Tax Com. v. Colorado Central Power Co., supra.* In the instant case the trial court, in his opinion, stated: "It is apparent that the assessor's

office has attempted to be fair in its valuation of properties, but in the opinion of the court it has been in error in failing to recognize the changes which have taken place in Fifteenth street properties and perhaps in other properties in the downtown area since the depression of 1929, and the corresponding raises of value in other sections of the city."

The city contends that the trial court committed grievous error in permitting taxpayer, over objections, to introduce voluminous testimony of net income of numerous properties other than the one involved in this case. It is conceded that the factors that may be used to determine the true value of taxable property are found in section 66, chapter 142, supra. None of them is controlling. *Fellows v. Grand Junction Sugar Co.,* 78 Colo. 393, 242 Pac. 635. Under the "value of the use" of the property, taxpayer introduced evidence of net and gross income. Evidence of gross income on the property before the court would have been material to aid in determining the true value. The trial court did not so limit the same. It permitted evidence of net and gross income of numerous other properties. This was evidence collected by a group of fifty-one taxpayers on Fifteenth street designating themselves as The Fifteenth Street Property Owners Committee. One illustration of such evidence, and the objections thereto, will suffice. Taxpayer submitted exhibit B, entitled "Analysis of Fifteenth Street Earnings for the Year 1928, through 1937, and the Relation of Net Income to the Assessed Valuation." This was objected to by counsel for the city in the following language: "If your honor pleases, we do not object to the authenticity of Plaintiff's Exhibit B. We do object, however, to the materiality of any analysis of earnings on Fifteenth Street property in the years 1928 to 1937, other than the earnings of the particular property in question, that is, the Plaza Hotel property. Management, whether efficient or inefficient; service, whether efficient or inefficient; nature of tenancy, and

many other elements go into the aggregate earning power of these various pieces of property; and we sincerely urge that any analysis of earnings of any property on Fifteenth Street other than the Plaza Hotel property is immaterial to this particular case; and for the further and additional reason that Section 115 of Chapter 142 of Colorado Statutes Annotated provides in part: 'Both the Assessor and the City, County or District Court, in considering such statement of grievance by any such taxpayer, shall take into consideration the value as fixed by the Assessor upon other similar assessable property, similarly situated,' which, it seems to us, would preclude a consideration of earnings as distinguished from assessment; for the further reason that it is an ingenious attempt by counsel for the plaintiff to define the area affected that best suits their convenience and is not a true cross-section of the downtown area."

The rulings of the court clearly indicate that, at first, it was inclined to sustain such objections, but subsequently permitted all of such evidence to be introduced. The result was confusion and a misconception of the issues. Objections to evidence as to net or gross income of other properties than the one involved should have been sustained, and it is apparent that the admission of such evidence led the court into the error of substituting its own judgment for that of the assessor. From language in the trial court's opinion it clearly appears that it did so, and while it perhaps considered some other testimony, the opinion clearly shows that in arriving at the conclusion of what it considered to be an excessive tax, it relied upon the testimony which capitalized the net income of all the Fifteenth street properties of the committee. The following statement is some evidence of this fact: "Giving consideration to all of the factors previously referred to in the opinion, the court is of the opinion that a fair assessed valuation of the Plaza Hotel would result from a capitalization of the net income for the intersection at eight per cent, or approxi-

mately 41⅔ per cent of the actual assessed valuation of the property in 1937, as shown by Exhibits 3 and U-1."

The opinion also indicates that had the court eliminated all of the testimony as to net income except as to the property before it, there would have been no substantial basis for its judgment, especially in view of presumptive validity of the assessment. Until it was clear beyond a doubt that the assessor acted arbitrarily in overruling the objections, or that the assessment manifestly was excessive and oppressive, it was not incumbent upon the trial court to entertain any other evidence upon which to reduce it. Unless the evidence clearly disclosed that the assessor had no basis in law to overrule the objections made by taxpayer, the assessment could not rightfully be impeached. It was not necessary for the assessor, at the hearing on the objections of taxpayer, to consider any evidence of net income, if he otherwise had reasonable grounds upon which to overrule such objections.

Taxpayer contends that there was discrimination under section 3, article X, supra, known as the uniformity clause. In *Ames v. People,* 26 Colo. 83, 107 (56 Pac. 656), we held: "The uniformity and equality enjoined by the Constitution require only that the same means and methods be applied impartially to all the constituents of each class, so that it operates equally and uniformly upon all persons and corporations in similar circumstances." See, also, *People ex rel. v. Henderson,* 12 Colo. 369, 21 Pac. 144.

Our previous reference to the reason given by the assessor for overruling the objection of taxpayer may be repeated here. In his "return of proceedings," filed by the assessor in compliance with section 115, chapter 142, supra, he stated: "That I * * * overruled the said objection of the said taxpayer because I believed the assessment complained of by him was not excessive, taking into consideration the assessed value as fixed by

me upon other similar assessable property similarly situated."

This indicates that the assessor was primarily concerned with the constitutional mandate of uniformity. If the trial court had given this phase similar consideration, it would have reached a different conclusion. That the consideration given by the assessor to uniformity was made necessary is indicated by the fact that numerous other taxpayers on Fifteenth street were seeking the same relief. Confusion on this issue also resulted from the consideration by the court of net income from other properties. If on this factor of uniformity the relevancy of such net income to assessment valuations is permitted to play a part, no uniformity can be maintained. The numerous factors involved in obtaining a net income applied differently by various owners would make the assessed value derived therefrom a speculative criterion, which would result in destroying any uniformity. Attention also is directed to section 2, chapter 142, supra, which requires land to be listed and valued separate and apart from the improvements thereon. Such separate valuation would be impossible under the net-income theory, especially when compared with other income properties, not related to the assessment before us. Moreover, section 115, supra, requires consideration by the assessor and court of "the value as fixed by the assessor upon other similar assessable property, similarly situated." In considering this requirement the court first must determine from the evidence what "other similar assessable property, similarly situated," was. That the court was confused on this issue clearly appears from the record, in that it went far afield. We quote the following:

"The Court: * * * In regard to the materiality of this other proposition, it is rather difficult, in view of the absence of findings from the Assessor, to determine just what he did consider. For that reason, I think that I must assume that although the collecting of these

properties into an area known as the Fifteenth Street area was apparently the act of the contesting property owners, nevertheless the Assessor, in arriving at a fair assessment, must consider the valuation placed upon other properties similarly situated. We cannot define that exactly, because no properties are exactly similarly situated; but it seems to me to be a matter of which I can take notice that the Fifteenth Street properties are all downtown properties, and although there is considerable difference among them, nevertheless they would be perhaps similarly situated, within the meaning of the statute; but the Assessor should consider those things, and the Court should consider them, and I believe any evidence within reasonable bounds that is material on one particular property is admissible in the case.

\* \* \*

"In passing on the evidence, as I said, we cannot be too specific about this declaration of the statute, because all properties are different, of course, but we have got to take some particular standard of similarity, and it seems that a downtown area of the character of Fifteenth Street is a reasonable standard for that purpose."

We again emphasize that the consideration required relates to values fixed by the assessor, not to values based on the capitalized net income on fifty-one properties located on Fifteenth street. All of these properties could not be "similar assessable property similarly situated." A statement that a hotel property on the corner of Fifteenth and Tremont is similar assessable property similarly situated, to a market located six blocks therefrom, at Fifteenth and Arapahoe, cannot possibly be correct. The issue here involved is narrower than that. The record discloses that the court received and considered evidence of properties considerably different than required under section 115, supra, as "similar assessable property." The claim that the Plaza Hotel was assessed above seventy per cent of its true value, because other properties were assessed on that basis, and

therefore in violation of the uniformity clause, was not ascertained by the trial court from the value fixed by the assessor on similar assessable property similarly situated, but primarily from evidence of net income. As already indicated, the record shows that evidence went far afield of this test, and when the assessor's valuations fixed on properties located on Tremont at Fourteenth, Sixteenth and Seventeenth streets are compared with the Plaza Hotel corner, there would seem to be no violation of uniformity. The trial court, in deciding that the uniformity clause was violated, held, that in order to satisfy uniformity, a net return of eight per cent on the assessed value was necessary, again disclosing the influence of the net-income evidence of other property. This, as we have already indicated, clearly is erroneous.

 The question of confiscation, as it arises under the due-process-of-law clauses, was urged by taxpayer and considered by the court. It found that taxpayer was entitled to a net return of at least 6.5 per cent on the assessed value. The theory seems to have been that unless the tax base permits a reasonable return on a capitalized income—in this instance 6.5 per cent—confiscation occurs, and the assessed value must be reduced to a figure such that the taxpayer may realize such a return. This is a novel theory, applied to the taxation of private property, especially when no public interest is involved. Except as to procedural questions, the due-process-of-law clauses have no application to ad valorem taxation. 61 C.J., p. 156, §95. Counsel for taxpayer cite *Great Northern Railway v. Weeks, supra,* to support their contention. In that case the court was concerned with the assessment of one of the largest utilities in the state of North Dakota. The action was one in equity to enjoin the collection of taxes on valuations, including properties located outside the state, and in other respects excessive and arbitrary, so as to violate due-process and equal-protection clauses under the Four-

teenth Amendment. A study of the case convinces us that it is inapplicable to the facts and issues before us. However, some of the pronouncements therein may be helpful here. On page 139 is the statement: "In determining the amount of the assessment the board was not bound by any formula, rule or method, but for guidance to right judgment it was free to consider all pertinent facts, estimates and forecasts and to give to them such weight as reasonably they might be deemed to have. Courts decline to disturb assessments for taxation unless shown clearly to transgress reasonable limits. Overvaluation is not of itself sufficient to warrant injunction against any part of the taxes based on the challenged assessment; mere error of judgment is not enough; there must be something that in legal effect is the equivalent of intention or fraudulent purpose to overvalue the property and so to set at naught fundamental principles that safeguard the taxpayer's rights and property." And at page 151 we find: "In cases such as this, courts are not permitted to weigh evidence of value. They may not substitute their opinions for the findings of assessing officers or boards."

The dissenting opinion of Mr. Justice Stone in that case, in which Justices Brandeis and Cardozo concurred, help to clarify the issues before us. The only constitutional limitations on the taxing power are equality and uniformity. In considering the element of confiscation on the record before us the trial court committed error. ▪▪ ▪▪ Counsel for taxpayer urge that if there is any competent evidence to sustain the court's finding, the judgment must be affirmed. From what we have already said, this rule has no application here. Most of the evidence on net income, and capitalized net income, as applied to other property, was immaterial. That this evidence dominated the court to such an extent that it substituted its judgment for that of the assessor, clearly appears from its opinion. Moreover, the action of the assessor in overruling the objections to the assessment

was a reasonable disposition of the problem presented, and was not arbitrary. As heretofore stated, if a legal basis existed for the assessor's action in overruling such objections, the assessment is valid.

This proceeding was brought under section 115, supra. In *Phillips v. Board of Com'rs*, 83 Colo. 82, at p. 84 (262 Pac. 523), appears the statement, clearly obiter dicta, that "a taxpayer who objects to an assessment made by the county assessor has a choice of at least two remedies to test its propriety." An examination of the record in that case discloses that no such issue was before the court. Nor is such a question presented by the record before us. Because the statutory reviewing and enforcing power of the tax commission is considerably broader than the issue required to be made under sections 115 and 116, chapter 142, supra, we suggest that the question as to whether it has exclusive jurisdiction (61 C.J., p. 777, §1005) in such matters is still open.

The judgment is reversed and the case remanded, with directions to dismiss the complaint.

Mr. Justice Francis E. Bouck, Mr. Justice Young and Mr. Justice Knous dissent.

Mr. Justice Knous dissenting in part.

While I do not oppose a reversal herein, I am unable to concur in the disposition made by the majority opinion.

In the case at bar the taxpayer was of the opinion that "his property had been assessed too high" (§114, c. 142, '35 C.S.A.) for the year 1938, and that the assessment was not uniform with that "upon other similar assessable property similarly situated." §115, c. 142, '35 C.S.A. He, therefore, protested the assessment, "appeared before the assessor and made known to the assessor the facts in the premises." §114, supra. In effect the assessor admitted that the taxpayer's property was assessed too high, but overruled the protest

upon the basis that it was impracticable and inconvenient at the time to revalue all of the downtown property in Denver which he said, of necessity, would have to be done before relief could be afforded this individual taxpayer. The taxpayer then "appealed to the district court." §115, supra; §49, c. 45. It would seem obvious that under section 115, supra, the first function that tribunal should perform was to determine whether the assessment, concerning which the appeal was taken, was "manifestly excessive, fraudulent or oppressive." If one or more of these factors entered into the valuation fixed by the assessor, it then was the duty of the court to fix the "true" or "just" or "full cash value" of the property in order that it might properly adjudge the amount of the refund to which the taxpayer was entitled. The district court, after consideration of all the evidence, found as a fact that the 1938 assessment was "manifestly excessive." Under the record I am unable to understand how the finding on this issue of the case could have been otherwise, since, as has been mentioned, the assessor practically conceded that the valuation on the property here involved was excessive for that year and in 1939 voluntarily reduced the assessment on this identical property more than twenty-five per cent and at the same time reduced the assessment about fifteen per cent on all properties within the "Fifteenth Street District," and this, notwithstanding all witnesses agreed that the conditions of the area were approximately the same in 1938 as in 1939. Commendable as was this act of alleviation of further injustice, it also was a confession that such existed in the previous year. Nevertheless, and without regard to these admissions and the unchallenged finding that the 1938 assessment on the property of the taxpayer was "manifestly excessive," the majority opinion remands the cause with "directions to dismiss the complaint." If the conclusions of the majority opinion are sound, at the most the cause should be remanded for retrial to deter-

mine the amount of refund of the excessive tax to the taxpayer. In other words, even *if* the trial court did adopt an erroneous formula in fixing the valuation for the determination of the amount of the refund properly due the taxpayer, concerning which I am in doubt and because thereof would concur in a simple reversal, it would seem certain that the taxpayer finally should not be precluded from relief because of that circumstance.

I do not believe, however, the court erred in *receiving evidence* of the net income of the property here involved and concerning other comparable properties. Net income is *one* of the factors properly to be considered in fixing value for ad valorem taxation. See §66, c. 142, '35 C.S.A.; *Fellows v. Grand Junction Sugar Co.,* 78 Colo. 393, 242 Pac. 635; *Tax Commission v. Midland Terminal Ry. Co.,* 93 Colo. 108, 24 P. (2d) 745.

I am also convinced that other falacious theories permeate the majority opinion, which if followed as precedents in future cases in the determination of these questions will jeopardize the efforts of taxpayers suffering from excessive, fraudulent or oppressive assessments in attempting to secure relief through the procedure adopted by the taxpayer in the present case.

The majority opinion recites that one of the controlling questions involved in a case of this character is: "Was the action taken by the assessor in overruling the objections arbitrary?" It then proceeds to demonstrate that in denying the protest of the taxpayer, made under section 114, supra,. the assessor did not act so. As I view the matter this question, while possibly pertinent of consideration where fraud is charged, is in no manner controlling in a controversy such as that before us where the honesty of no one is challenged. The matter of which the taxpayer was complaining, both at the hearing before the assessor and in the district court, was the alleged excessiveness of the *original* valuation. If it is violative of the Constitution and statutes, relief to the taxpayer must follow regardless of the attitude taken by the as-

sessor at the protest hearing. At that time the restrained conduct of the assessor may not validate an excessive assessment previously made. Nor in such case is the convenience of the assessing authority a good ground for denying immediate relief.

Next, where no actual fraud is charged, I am unable to conceive how the good faith of the assessor in making the original assessment can have any relation to the question of whether such valuation was manifestly excessive. It seems to me that an excessive assessment, even though made in the best of faith, would be just as oppressive to the taxpayer and certain to effect the confiscation of his property as if maliciously imposed.

Further, as I understand the majority opinion, more threatening than all others is the promulgated theory that the excessive assessment of a given property may be justified by the circumstance that other property of similar character in the same area also is admittedly likewise excessively valued for taxation purposes. This declaration purportedly is based upon the uniformity clause of the Constitution. Art. X, §3; see, also, section 115, supra. Under this doctrine where an individual taxpayer appeals, as was done in the case at bar, notwithstanding he might conclusively establish an excessive valuation, he could be denied relief on a showing by the taxing authorities that other property similar to his in the same area likewise was assessed on the same erroneous basis. I cannot believe the uniformity clause was designed to justify any such conclusion.

I am, therefore, of the opinion that the case should be remanded with directions to the district court to proceed to determine, in accord with section 115, supra, the amount of refund to which the taxpayer is entitled.

Mr. Justice Francis E. Bouck and Mr. Justice Young concur in this dissenting opinion.