No. 19,668.

MARDI, INCORPORATED, ET AL., *v.*
CITY AND COUNTY OF DENVER, ET AL.

(375 P. [2d] 682)

Decided November 5, 1962.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, Mr. LAURENCE W. DEMUTH, JR., Mr. CARL F. EIBERGER, for plaintiffs in error.

Mr. ROBERT S. WHAM, City Attorney, Mr. W. KEITH PETERSON, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS action involves objections under C.R.S. '53, 137-3-38, to property tax assessments for the year 1958. The parties appear here in the same order as in the trial court and will be referred to accordingly or by name.

Plaintiffs are the owners of individual tracts of land located within the City and County of Denver, consisting of Blocks A and B, Coloden Moor Subdivision, popularly known as the Cherry Creek Shopping Center. In the year 1958 the assessor for the City and County of Denver assessed the parcels of real estate in the Coloden Moor Subdivision, owned by the respective plaintiffs, at the following valuations (exclusive of improvements):

| | |
|---|---|
| Mardi, Inc. | $276,210 |
| The Milne Corp. | $160,980 |
| The Mackey Co. | $163,220 |
| The Buell Development Corporation | $265,320 |
| T. H. Buell | $551,900 |

Notices of the assessed valuations, dated June 11, 1958, were sent to plaintiffs who objected to the assessments by filing with the assessor a written protest which was received by him on July 18, 1958. On the same day the assessor denied the protest and advised plaintiffs that an appeal to the Board of Equalization must be concluded by July 28, 1958. Plaintiffs accordingly made timely petition to the Board at its meeting on July 28, 1958, praying for a reduction. After presenting evidence to the

Board on November 26 and December 10, 1958, plaintiffs were informed by written notice dated December 31, 1958, that their petition was rejected. This notice was received by plaintiffs on Friday, January 2, 1959.

Under the provisions of 137-3-38 an appeal from the Board to the District Court had to be taken on or before the first Monday in January following the assessment. Under Denver's interpretation of this law, as hereinafter discussed, plaintiffs thus had only one day (excluding Saturday and Sunday) after receiving notice from the Board in which to not only prepare and file their complaint but also the same short period in which to pay very substantial sums in taxes.

It seems necessary here to point out that such a delay by the Board in giving the rejection notice to plaintiffs cannot be justified and can scarcely be deemed to be due process of law, or fair, or to have been done in good faith when the Board knew full well that such notice received on Friday had to be acted on, if at all, by plaintiffs at least filing their law suit by the following Monday, even if the Board did not know just when the taxes had to be paid. Be that as it may, on Monday, January 5, 1959, plaintiffs did appeal the decision to the district court; however, they did not pay their 1958 taxes until later. In so doing they relied on C.R.S. '53, 137-9-3, which defendants contend is inapplicable to these proceedings.

Trial of the appeal to the district court commenced on January 19, 1960. The court treated the proceeding as a trial de novo, which is a matter also in dispute and which we hereinafter discuss. It took voluminous testimony concerning the valuations placed upon the properties, the valuations and assessments placed upon other shopping centers in the Denver area, and various methods of assessment for tax purposes. The trial concluded on February 2, 1960, and the case was taken under advisement with judgment dismissing the appeal being en-

tered on June 30, 1960. On August 30, 1960, the court entered an amended judgment and decree for defendants in which it stated in pertinent part:

"* * * the Court finds that the evidence of the plaintiffs fully supports their contention that said assessment lacks uniformity and is manifestly excessive. However, this finding is moot as it is the further opinion of the Court that the documentary evidence introduced by defendants and the admission of the plaintiffs fully supports defendants' defense that the plaintiffs failed to pay to the Treasurer of the City and County of Denver the amount of the taxes so assessed against said property within the time as provided in Section 137-3-38, CRS, 1953 (which states in pertinent part):

" '* * * In all cases where the prayer of such petitioner be denied, in whole or in part, by the county board of equalization, the petitioner may appeal from the decision of the board to the district court of the county wherein said property is assessed. Such appeal shall be taken on or before the first Monday in January following said assessment and shall be perfected in the same manner within the extended time herein stated as is now provided by law for appeals from the board of county commissioners upon disallowance of claims against the county; *but before the appeal to the district court shall be allowed, the petitioner shall pay to the county treasurer the amount of the tax levied pursuant to said assessment.*' " (Emphasis supplied.)

"Plaintiffs paid, under protest, the disputed 1958 taxes in two equal installments, March 4, 1959, and July 30, 1959, and contend that these payments which were made pursuant to 137-9-3, CRS, 1953, satisfied the requirement set forth in 137-3-38. It is the opinion of the Court, however, and the Court so finds, that Sections 137-3-38 and 137-9-3 relate to two different matters. Section 137-3-38 sets up the procedure for appeal and makes the payment of the taxes as levied by means of the alleged

erroneous assessment *a condition precedent to the district court taking jurisdiction of the appeal,* whereas, Section 137-9-3 sets up a period of time during which taxes which are due and payable, and are not in dispute, may be paid." (Emphasis supplied.)

Plaintiffs are here by writ of error and urge numerous grounds for reversal. However we find it necessary to consider only the preliminary matter of whether this was properly treated as a trial de novo and then we will consider the principal ground urged by plaintiffs which relates to the date when the taxes had to be paid.

The reason the de novo matter is important is because it assertedly related to the admissibility *vel non* of certain evidence.

■ This was a special statutory proceeding governed by the provisions of 137-3-38 and not by Rule 106, R.C.P. Colo. See for example: *The Board of County Commissioners of Arapahoe County v. The Denver Union Water Company,* 32 Colo. 382, 388-90, 76 Pac. 1060 (1904). The statute does not restrict the review to questions of jurisdiction or abuse of discretion. In *City and County of Denver et al., v. Hover Motors, Inc.,* 120 Colo. 511, 516, 212 P. (2d) 99 (1949), it was stated that the court's jurisdiction in cases arising under 137-3-38 is similar to its jurisdiction in a certiorari proceeding. This does not mean, however, that it is restricted to the limitations of certiorari. Relief powers such as those given in 137-3-38 are inconsistent with the narrow questions common to certiorari. While the court must consider the presumption of correctness attached to the assessment, *Colorado Tax Commisison v. Midland Terminal Railway Company,* 93 Colo. 108, 24 P. (2d) 745 (1933), the statute obviously contemplates a trial de novo as to those matters within its purview. Thus here the district court properly treated this matter as one to be tried de novo.

This brings us to the question as to whether 137-3-38 requires or can require payment of taxes levied under a

contested assessment as a condition precedent to the court's jurisdiction.

On numerous occasions in the past this Court has decided questions relating to the remedies of a taxpayer proceeding under this statute. See for example *The Board of County Commissioners of Arapahoe County v. The Denver Union Water Company,* supra, and *Simmons v. Board of County Commissioners of Jefferson County,* 146 Colo. 392, 361 P. (2d) 769 (1961). However we have never passed upon the precise question presented by this writ of error. For reasons hereinafter set forth we conclude that the district court erred in holding that payment of the taxes in question was a condition precedent to plaintiffs filing their action.

We note that 137-9-3 expressly requires that: *"All* taxes shall be due and payable, one-half on or before the last day of February, and the remainder on or before the last day of July of the year following the one in which they were assessed. * * *." (Emphasis supplied.)

There is no dispute that plaintiffs complied with this requirement. The difficulty arises because as noted earlier 137-3-38, under which a taxpayer must bring suit to correct assessments which are "manifestly fraudulent, erroneous or oppressive," provides in pertinent part that "* * * before appeal to the district court shall be allowed, the petitioner shall pay to the county treasurer the amount of the tax levied pursuant to said assessment. * * *."

▉ In deciding the applicability of the above phrase it is unnecessary for us to consider plaintiffs' contention that the above quoted expression must be interpreted to mean that the taxes only need be paid before judgment and that they need not be paid before jurisdiction can attach upon filing of the action. Nor need we apply the wording literally as defendants urge. The reason is that the wording in section 38 attempts to require a protesting taxpayer to prepay his taxes when this is not re-

quired of other taxpayers who do not protest. This lack of uniformity is an invidious and unwarranted distinction not countenanced by constitutional requirements of equality. No justifiable basis for the prepayment required in section 38 appears here. We hold the quoted provision of section 38 is discriminatory and thus void.

This leaves only 137-9-3 in effect as to the date taxes must be paid. Therefore the plaintiffs properly brought their action on January 5th without having prepaid the taxes in question.

This conclusion is fortified by the fact that under long established principles statutes governing appeals are not to be so construed as to deny a right of appeal especially when, as here, the appealing parties have acted in good faith and with reasonable promptness. *Barnard, et al., v. Moore,* 72 Colo. 146, 209 Pac. 800 (1922); *Markey v. People,* 73 Colo. 466, 216 Pac. 526 (1923).

The only judgment actually before us is based on the dismissal of the complaint due to the application of the prepayment provision of C.R.S. '53, 137-3-38. The trial court's finding that "* * * The assessment lacks uniformity and is manifestly excessive" is not applicable here because it was not the basis upon which the decision rested, so does not require us to determine whether it meets the requirements of the statute whereby relief could be afforded.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with the views herein expressed.

Mr. Justice McWilliams not participating.